[No. 58524-5. En Banc. September 17, 1992.]

INLANDBOATMEN'S UNION OF THE PACIFIC, ET AL,
*Respondents*, v. THE DEPARTMENT
OF TRANSPORTATION, *Appellant*.

698

*Kenneth O. Eikenberry, Attorney General,* and *Robert M. McIntosh, Assistant,* for appellant.

*Reaugh, Fischnaller & Oettinger,* by *Sylvia Luppert* and *Jeffrey Campiche,* for respondent Inlandboatmen's Union.

*Kenneth O. Eikenberry, Attorney General,* and *Elliott S. Furst, Assistant,* for respondent State.

ANDERSEN, J. —

FACTS OF CASE

The Washington State Ferry System here appeals a decision that United States Coast Guard regulation of state ferries does not prohibit enforcement on state ferries of the Washington Industrial Safety and Health Act by the State of Washington Department of Labor and Industries (DLI). We affirm.

The Washington State Ferry System is a division of the Washington Department of Transportation which operates passenger ferries on Puget Sound. All parties agree that the waters of Puget Sound are navigable waters and that the ferries are inspected vessels certified by the Coast Guard.

DLI is the agency responsible for enforcing the Washington Industrial Safety and Health Act of 1973 (WISHA), RCW 49.17. In 1985, DLI inspected the ferry, M/V *Olympic*, in response to a complaint regarding asbestos danger. DLI cited the ferry for violation of WISHA regulations regarding asbestos hazards, excessive noise levels and lack of various safety programs.

The ferry system, as the employer, appealed to the Board of Industrial Insurance Appeals (Board) on the ground that the jurisdiction of the Coast Guard over the health and safety of workers on inspected vessels preempted the jurisdiction of DLI. The industrial appeals judge concluded that the health and safety area was sufficiently regulated by the Coast Guard to preempt WISHA's jurisdiction.

DLI appealed this decision to the full Board which remanded the case for the taking of additional testimony regarding the Coast Guard's position.

In 1987, DLI issued another citation to the ferries for WISHA violations aboard the ferry M/V *Kaleetan* for failure to have fall protection (a railing) around the "Texas" deck (the uppermost deck above the passenger deck between the

wheelhouses). DLI subsequently reinspected and learned that crew members were still using the unprotected deck and issued a "non-abatement" citation along with a fine. The ferries appealed the railing citation to the Board. The appeals on the noise and asbestos citation and on the railing citation were consolidated for hearing.

The industrial appeals judge concluded that the DLI's jurisdiction to enforce the WISHA regulations had been preempted by the Coast Guard.

DLI, the National Maritime Union and the Inlandboatmen's Union of the Pacific (IBU) appealed that decision to the full Board which denied the petitions for review. The proposed decisions therefore became the final orders of the Board. IBU and DLI appealed the Board's orders to the Superior Court of the State of Washington for King County. The Superior Court reversed the decisions of the Board, concluding that federal law did not preempt the regulation of the ferries by the State.

Direct review was granted by this court.

One ultimate issue is presented.

ISSUE

Is state regulation of workplace safety aboard Washington State ferries preempted by federal law?

DECISION

CONCLUSION. After analyzing all pertinent aspects of preemption law, we conclude that regulation of Washington State ferries by the DLI under WISHA is not precluded by Coast Guard regulation of the ferries under federal law.

DLI suggests that it may be unnecessary for this court to reach the issue of federal preemption since the State is the employer of the ferry crews and in that capacity can impose upon itself whatever safety regulations it wishes irrespective of federal law. While that argument has facial appeal, the fact is that the State of Washington is enforcing state law (WISHA) in an area where federal law is also being applied by the Coast Guard. Therefore, if this is an area

where federal law preempts state law, then the fact that the State is the employer would not prevent state law from being preempted. The fact that Washington owns the vessels and is the employer of the crews will be relevant in parts of the federal preemption analysis but it does not make the preemption inquiry unnecessary.

## PREEMPTION LAW OVERVIEW

■ Before considering the Washington State Ferry System's arguments, a brief overview of preemption doctrine is helpful. Federal preemption doctrine is based on the "supremacy clause" of the United States Constitution. U.S. Const. art. 6. State law can be preempted in two ways: field preemption or conflict preemption. If Congress indicates an intent to occupy a given field (explicitly or impliedly), any state law falling within that field is preempted; even if Congress has not indicated an intent to occupy a field, state law is still preempted to the extent it would actually conflict with federal law.[1]

Federal preemption is governed by the intent of Congress and may be expressed in the federal statute. Absent explicit preemptive language, Congress' intent to supersede state law in a given area may be implied if (1) a scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the states to supplement it, (2) if the federal act touches a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject, or (3) if the goals sought to be obtained or the obligations imposed reveal a purpose to preclude state authority.[2]

---

[1]*Alverado v. WPPSS*, 111 Wn.2d 424, 431, 759 P.2d 427 (1988), *cert. denied*, 490 U.S. 1004 (1989); *Gade v. National Solid Wastes Mgt. Ass'n*, ___ U.S. ___, 120 L. Ed. 2d 73, 84, ___ S. Ct. ___ (1992).

[2]*Wisconsin Pub. Intervenor v. Mortier*, ___ U.S. ___, 115 L. Ed. 2d 532, 111 S. Ct. 2476, 2481-82 (1991).

Federal regulations, within the scope of an agency's authority, have the same preemptive effect as federal statutes.[3]

Even if Congress has not occupied an entire field, preemption may occur to the extent that state and federal law actually conflict. Such a conflict occurs (1) when compliance with both laws is physically impossible, or (2) when a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.[4]

■ There is a strong presumption against finding preemption in an ambiguous case,[5] and the burden of proof is on the party claiming preemption.[6]

It follows, therefore, that our inquiry in the present case is whether the Coast Guard statutes and regulations either explicitly, implicitly or by virtue of an actual conflict preempt the Washington safety statute and regulations.

## Explicit Preemption

■ In order to find preemption, the courts have required an "unambiguous congressional mandate".[7] The ferry system argues that the statement of the primary duties of the Coast Guard found in 14 U.S.C. § 2 is an explicit statement of Congress' intent to preempt state regulation.

■ We find nothing in this statutory section indicating an intent to preempt state law on maritime safety matters. As will be discussed shortly, numerous decisions have concluded

---

[3]*Berger v. Personal Prods., Inc.*, 115 Wn.2d 267, 270, 797 P.2d 1148 (1990), *cert. denied*, ___ U.S. ___, 113 L. Ed. 2d 649, 111 S. Ct. 1584 (1991); *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 369, 90 L. Ed. 2d 369, 106 S. Ct. 1890 (1986).

[4]*Mortier*, 111 S. Ct. at 2482.

[5]*Alverado*, 111 Wn.2d at 432; *Maryland v. Louisiana*, 451 U.S. 725, 746, 68 L. Ed. 2d 576, 101 S. Ct. 2114 (1981).

[6]1 R. Rotunda, J. Nowak & J. Young, *Constitutional Law* § 12.4(d), at 251 (Supp. 1991); *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 255, 78 L. Ed. 2d 443, 104 S. Ct. 615 (1984).

[7]*E.g.*, *Pioneer First Fed. Sav. & Loan Ass'n v. Pioneer Nat'l Bank*, 98 Wn.2d 853, 858, 659 P.2d 481 (1983).

that the maritime area is not a field which Congress has totally occupied. The Coast Guard, however, does at times share its regulatory authority with state regulators.[8]

The ferry system relies heavily on a 1983 "Memorandum of Understanding"[9] (MOU) signed by the Commandant of the Coast Guard and the federal Assistant Secretary for Occupational Safety and Health, Department of Labor, in which the two federal agencies conclude that a section of OSHA (the federal Occupational Safety and Health Act of 1970) primarily allocates to the Coast Guard the duty to regulate the working conditions of seamen aboard inspected vessels.

That memorandum actually addresses a different issue than state-federal regulatory power over seafarers' safety; it involves an allocation of federal resources between two potentially duplicative federal regulatory schemes.

The memorandum is based upon section 4(b)(i) of the OSH Act. Referring to that enactment, the memorandum declares in part:

> OSHA has a general statutory authority to assure safe and healthful working conditions for working men and women under the Occupational Safety and Health (OSH) Act of 1970. Section 4(b)(1) of the OSH Act defines the relationship between OSHA and the *other federal agencies* whose exercise of statutory responsibilities may affect occupational safety and health. *Based on OSHA's interpretation of section 4(b)(1)*, and as a result of the Coast Guard's exercise of its authority, described above, OSHA has concluded that it may not enforce the OSH Act with respect to the working conditions of seamen aboard inspected vessels. Nonetheless, OSHA retains the following responsibilities.

(Italics ours.) 48 Fed. Reg. 11,551 (1983).

Section 4(b)(1) of OSHA (29 U.S.C. § 653(b)(1)) provides:

> Nothing in this chapter shall apply to working conditions of employees with respect to which *other Federal agencies* . . .

---

[8]*See, e.g., Beveridge v. Lewis*, 939 F.2d 859 (9th Cir. 1991); *Grand Canyon Dories, Inc. v. Idaho Outfitters & Guides Bd.*, 709 F.2d 1250, 1255 (9th Cir. 1983).

[9]48 Fed. Reg. 11,550-51 (1983).

exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health.

(Italics ours.) Courts have understood this section as an attempt to avoid duplication of effort and resources among federal agencies.[10]

■ As we have recently had occasion to point out, the power of one federal law to exclude the application of another federal law does not control the issue of concurrent jurisdiction between the federal government and the states.[11]

The ferry system argues that WISHA is simply a derivative of OSHA and hence if OSHA yields to the Coast Guard, WISHA must also do so. We disagree.

■ OSHA does not confer federal power on a state which has adopted a federally approved plan, it "merely removes federal preemption so that the state may exercise its own sovereign powers over occupational safety and health."[12] In fact, WISHA was adopted pursuant to the exercise of the state police power and in keeping with the mandates of article 2, section 35 of the state constitution.[13] All that the Coast Guard-OSHA memorandum establishes is the allocation of federal regulatory authority between the two federal agencies; it does not address concurrent state regulation over maritime safety. We find no explicit statement showing a congressional intent to preempt state regulation of ferry crews.

---

[10]*In re Inspection of Norfolk Dredging Co.*, 783 F.2d 1526, 1530 (11th Cir.), cert. denied, 479 U.S. 883 (1986); *Donovan v. Red Star Marine Servs., Inc.*, 739 F.2d 774, 779 (2d Cir. 1984), cert. denied, 470 U.S. 1003 (1985).

[11]*Department of Labor & Indus. v. Common Carriers, Inc.*, 111 Wn.2d 586, 589-90, 762 P.2d 348 (1988).

[12]*United Air Lines, Inc. v. Occupational Safety & Health Appeals Bd.*, 32 Cal. 3d 762, 772, 654 P.2d 157, 187 Cal. Rptr. 387 (1982). *See also Gade*, 120 L. Ed. 2d at 83.

[13]RCW 49.17.010.

## Implicit Intent To Preempt

The ferry system argues that the Coast Guard's detailed regulatory scheme implies a federal intent to occupy the entire field of maritime safety. We disagree and observe that courts have been very reticent to imply federal preemption based on only a comprehensive federal scheme.

■ A finding that Congress intended to preempt state regulation in a given field must be based on " 'an unambiguous congressional mandate to that effect' " and, although relevant, a detailed regulatory scheme may reflect the complexity of the subject rather than any intent to preempt state law.[14] Even though the Coast Guard has enacted comprehensive standards for inspected vessels, this does not imply an unambiguous congressional intent to occupy the entire field of maritime safety.

The ferry system also argues that regulation of the ferries touches the maritime field in which federal interest is so dominant that federal law should be assumed to preclude all state regulation. Again, we disagree. Congress has not preempted the entire field of maritime regulation and safety. Rather, in many cases state regulatory power has been allowed to coexist with federal maritime regulation.[15] The historic police powers of the state are not superseded unless there is a "clear and manifest purpose of Congress".[16] Greater deference is given to state legislation (such as WISHA) where public health and safety are involved.[17] In

---

[14]*Pioneer*, 98 Wn.2d at 858. *See, e.g., Beveridge*, 939 F.2d at 864; *Kelly v. Washington ex rel. Foss Co.*, 302 U.S. 1, 82 L. Ed. 3, 58 S. Ct. 87 (1937); *Huron Portland Cement Co. v. Detroit*, 362 U.S. 440, 4 L. Ed. 2d 852, 80 S. Ct. 813, 78 A.L.R.2d 1294 (1960).

[15]*See, e.g., Ray v. ARCO*, 435 U.S. 151, 55 L. Ed. 2d 179, 98 S. Ct. 988 (1978); *Grand Canyon Dories, Inc. v. Idaho Outfitters & Guides Bd., supra; Beveridge v. Lewis, supra; Kelly v. Washington ex rel. Foss Co., supra; Huron Portland Cement Co. v. Detroit, supra.*

[16]*Ray*, 435 U.S. at 157; *Grand Canyon*, 709 F.2d at 1252.

[17]1 R. Rotunda, J. Nowak & J. Young, *Constitutional Law* § 12.3, at 631 n.8 (1986).

this case the State's interest in protecting Washington workers' health and safety is strong and local in character, and WISHA was enacted pursuant to the police power of the State.[18]

The state regulations involved here apply only to vessels owned by the State of Washington; these operate primarily in Washington waters and pertain to employees of the State of Washington. This is not a case where the federal interest is so dominant that we will imply federal preemption. The United States Court of Appeals for the Ninth Circuit recently held that while navigation and vessel safety are matters of major national importance, this does not mean that all local regulatory efforts are invalidated.[19]

The ferries also argue that state laws are totally preempted because the "goals sought to be obtained" by the federal law reveal a purpose to preclude all state regulation. The ferries argue one of the goals of Coast Guard regulation is national uniformity and that allowing WISHA to inspect the ferries would destroy uniformity. It is not at all clear why "national uniformity" is necessary in the regulation of Washington State ferry crews. Although there are many maritime situations where the need for national uniformity is an important consideration, regulation of Washington employees, on state-owned vessels operating almost exclusively in Washington territorial waters, is not such a case.

We conclude that Congress has not entirely occupied the field of maritime safety so as to supersede all state law on the subject.

## Conflict

█ Having concluded that Congress has not entirely displaced state regulation over the health and safety of Washington ferry workers, it is next necessary to decide whether there is an actual conflict between Coast Guard

---

[18]RCW 49.17.010.

[19]*Beveridge*, 939 F.2d at 863. *See also Chevron U.S.A., Inc. v. Hammond*, 726 F.2d 483 (9th Cir. 1984), *cert. denied sub nom. Chevron U.S.A., Inc. v. Sheffield*, 471 U.S. 1140 (1985).

regulations and WISHA regulations in the respects involved in these citations. *To the extent* there is an actual conflict, state law is preempted; that is, when it is (1) impossible to comply with both federal and state regulation, or (2) where the state law stands as an obstacle to the purposes and objectives of Congress.

The ferry system concedes that it is possible to comply with both the Coast Guard and the WISHA regulations involved in this case. However, it argues that enforcement of WISHA stands as an obstacle to the purposes of the Coast Guard laws. We conclude, however, that state regulation of ferry crew safety does not frustrate the purpose of relevant federal law.

One purpose of Coast Guard regulations is to "enforce regulations for the promotion of safety of life and property on and under the high seas . . .". 14 U.S.C. § 2. The purpose of WISHA is to "assure, insofar as may reasonably be possible, safe and healthful working conditions for every man and woman working in the state of Washington . . .". RCW 49.17.010. Since the need for national uniformity is not critical in regard to the safety regulations applicable to Washington ferries, we cannot conclude that enforcement of WISHA is an "obstacle" to the purposes of the Coast Guard laws.

As Professor Rotunda has pointed out:

> If it is possible to comply with both state and federal law, there is no "actual conflict." Similarly, there is no "actual conflict" unless the state law frustrates the purposes of the federal law. *This standard is not easy to meet.* For example, a state law does not frustrate federal purposes merely because it provides for less competition, or requires that federally licensed vessels in interstate commerce also meet local pollution standards, or prohibits items transported in interstate commerce that do not meet state maturity standards which are set higher than federal maturity standards. In all these cases, the state requirements place hurdles in the way of federal regulation, but these hurdles are not treated as improper when the Court finds that Congress did not intend to preclude concurrent state and federal regulation.

(Footnotes omitted. Italics ours.) 1 R. Rotunda, J. Nowak & J. Young, *Constitutional Law* § 12.4(d), at 251 (Supp. 1991).

Courts have been very reticent to preempt state regulations and laws based on an ambiguous implication that they frustrate the purpose of federal law.[20]

Since the ferry system concedes that it is possible to comply with both the WISHA asbestos provisions of the Washington Administrative Code (WAC) and the Coast Guard Navigational and Inspection Circular (NVIC) on asbestos, and with both the WISHA noise WAC and the Coast Guard NVIC regarding noise levels and with both the WISHA railing WAC and the federal regulation regarding railings, it is not necessary to lay out in detail all the requirements of those regulations.

However, the ferry system does argue that there is an actual conflict between WISHA's requirement for a railing on the Texas deck of the M/V *Kaleetan* and the Coast Guard's ballast requirements. This, however, is not the kind of "actual conflict" that would cause preemption. A Coast Guard captain testified that a ferry would have to notify the Coast Guard if it installed a railing on the Texas deck and a new stability test would be done and an increase in ballast might be required. He testified the railing could be installed if appropriate ballast adjustments were made and that the Coast Guard would assist in that determination. A Coast Guard commander testified there were no Coast Guard regulations which precluded a ship owner from imposing higher safety standards than those required by the Coast Guard rules so long as no other safety hazard was thereby created. We thus perceive no actual conflict here between WISHA and Coast Guard regulations.

■ The essence of the ferry system's argument really seems to be that it is unduly burdensome for it to have to comply with two different sets of safety regulations. While this may well be entirely true, the burdensomeness of dual

[20]*See, e.g., Pacific Gas & Elec. Co. v. State Energy Resources Conserv. & Dev. Comm'n*, 461 U.S. 190, 75 L. Ed. 2d 752, 103 S. Ct. 1713 (1983); *Grand Canyon Dories, Inc. v. Idaho Outfitters & Guides Bd.*, *supra*; *Silkwood v. Kerr-McGee Corp.*, *supra*; *Department of Labor & Indus. v. Common Carriers, Inc.*, 111 Wn.2d 586, 589, 762 P.2d 348 (1988).

regulation is not a factor in connection with the legal preemption issue.[21] So long as there is no actual conflict, the wisdom of dual regulation is for our State Legislature, not the courts.[22]

DLI concedes that WISHA regulations which actually do conflict with Coast Guard regulations would be preempted. We agree, since this comports with the preemption rule that state law is preempted *to the extent* it actually conflicts with federal law.[23] It would be almost impossible for a court to compare all the WISHA regulations with all of the Coast Guard regulations to determine any potential conflicts and this is not the scope of inquiry in a preemption case. The possibility of interference or the potential for future conflicts do not justify a finding of preemption.[24] Courts have distinguished between necessary conflicts and possible conflicts and commented there "would be time to consider future conflicts should they arise."[25] In the future, should a conflict arise, RCW 49.17.080 and .090 would allow the ferry system to apply for a variance from WISHA safety regulations or else new WISHA regulations could be developed which are directly applicable to maritime safety.

 We conclude that the ferry system has not overcome the strong presumption against federal preemption as there has been no showing of a congressional intent to preclude all state regulation or of an actual conflict between the relevant WISHA regulations and the Coast Guard rules.

---

[21]1 R. Rotunda, J. Nowak & J. Young, *Constitutional Law* § 12.4, at 244-45 (Supp. 1991).

[22]*See, e.g., Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 373 U.S. 929, 10 L. Ed. 2d 248, 83 S. Ct. 1210 (1963).

[23]*Ray,* 435 U.S. at 158; *Pacific Gas,* 461 U.S. at 204.

[24]*Common Carriers,* 111 Wn.2d at 589; *United Air Lines, Inc. v. Occupational Safety & Health Appeals Bd.,* 32 Cal. 3d 762, 774-75, 654 P.2d 157, 187 Cal. Rptr. 387 (1982).

[25]*Beveridge v. Lewis,* 939 F.2d 859, 863 (9th Cir. 1991), and cases cited therein.

710

## Washington Law

The ferry system argues that even if there is no federal preemption, the Washington Legislature has indicated it does not intend for DLI to enforce WISHA regulations aboard the state ferries. It relies upon chapter 6, section 64 of the 1989 Transportation budget appropriations law which states:

> By July 1, 1990[26] the department of transportation shall take actions necessary to ensure that the safety requirements for work places in the state ferry system, whether within the navigable waters subject to the jurisdiction of the state of Washington or the United States, conform, at a minimum, with the employee safety and health regulations adopted by the department of labor and industries pursuant to chapter 49.17 RCW.

Laws of 1989, 1st Ex. Sess., ch. 6, § 64, p. 2526 (uncodified).

The ferry system argues that because this section does not contain an explicit grant of inspection authority, the Legislature did not intend DLI to enforce the mandate to comply with WISHA. This is unconvincing since section 64 references RCW 49.17 which includes both inspection powers and enforcement by DLI.[27]

Additionally, to the extent that the Legislature was limiting and qualifying its appropriations to the ferry system, section 64 may be legally effective. However, as we have repeatedly made clear, an appropriations bill cannot abolish or amend existing law.[28] Existing law is contained in RCW 49.17.020(3) and provides that the State of Washington is an employer which must comply with WISHA. Therefore, since WISHA is not preempted by federal law, the Department of Transportation d.b.a. the Washington State Ferry System is subject to the safety regulations of WISHA

---

[26]Amended to mandate compliance by July 1, 1991. Laws of 1990, ch. 298, § 29, p. 1688.

[27]RCW 49.17.070, .120.

[28]*Flanders v. Morris*, 88 Wn.2d 183, 188, 558 P.2d 769 (1977); *Service Employees Int'l Union, Local 6 v. Superintendent of Pub. Instruction*, 104 Wn.2d 344, 351, 705 P.2d 776 (1985).

to the extent there is no actual conflict with Coast Guard regulations.

We have also considered the ferry system's other arguments and conclude that they are without merit.

The trial court's decision that federal law does not preempt Washington worker safety laws aboard Washington State ferries is affirmed.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.