[No. 45258-4-I.   Division One.   October 2, 2000.]

NELLIE T. CRANE, ET AL., *Appellants*, v. THE STATE OF WASHINGTON, ET AL., *Respondents*.

428

*Joseph S. Stacey* and *James P. Jacobsen* (of *Beard, Stacey & Trueb, L.L.P.*), for appellants.

*Christine O. Gregoire, Attorney General,* and *William A. Garling, Jr.* and *Michael A. Nicefaro, Jr., Deputies,* for respondents.

BAKER, J. — Nellie Crane, an ordinary seaman employed by Washington State Ferries, was diagnosed with hepatitis C after sticking her finger on a discarded diabetic's lancet while cleaning a ferry passenger cabin. Crane filed a negligence claim against the Washington State Department of Transportation (WSDOT) alleging that she had contracted hepatitis C from the needle as a result of the State's failure to follow regulations regarding bloodborne pathogens. The State filed a motion for summary judgment, arguing that Crane had not met her burden of proof on causation. The trial court granted summary judgment, and Crane appeals. We affirm.

I

Nellie Crane, an ordinary seaman working on the Washington State Ferry *Walla Walla*, was cleaning the passenger cabin when she noticed a small piece of blue plastic wedged in the crease of a seat cushion. As she removed it, she felt a sharp prick in her finger and realized that the object was a needle or diabetic's lancet. The needle had pierced her skin and she was bleeding. Crane immediately reported the incident to her supervisor and sought medical treatment. Almost three years after the incident, Crane began feeling ill, and at that time she tested positive for hepatitis C.

Crane filed suit against the State of Washington, WSDOT, and Washington State Ferries alleging that she acquired hepatitis C from the needle stick as a proximate result of the defendants' negligence. Defendants filed a motion for summary judgment, claiming that Crane could not have acquired hepatitis C from the needle stick because her medical records showed that she tested positive for

"non-A non-B hepatitis," now known as hepatitis C, six years prior to the incident. Therefore, she failed to meet her burden to prove proximate cause. Crane opposed summary judgment, arguing that genuine issues of fact precluded summary judgment because her medical records did not conclusively prove that she tested positive for hepatitis C prior to the needle stick and because Crane's treating physician, Dr. Christopher Shuhart, was of the opinion that "on a more probable than not basis, the hepatitis C is related to the needle stick injury which occurred on the vessel in 1992." Crane also argued that under the *Pennsylvania*[1] Rule, WSDOT's violation of federal and state safety regulations shifted the burden on causation to the violator to prove that the violation could not have contributed to the injury; that a seaman's burden on causation is "slight"; and that under *Sentilles v. Inter-Caribbean Shipping Corp.*,[2] the jury may decide a seaman's causation issue even if the medical opinions are not conclusive.

The trial court granted summary judgment to defendants, finding that no genuine issue of material fact existed because Crane was unable to prove proximate cause. In so concluding, the court noted that there was no test done to the needle to determine if it harbored hepatitis C virus and that "the medical records, without a doubt, demonstrate that she had hepatitis C or at least non-A, non-B hepatitis in 1986." The court also found that plaintiff had the burden of proving proximate cause and that the *Pennsylvania* and *Sentilles* rules did not apply. Crane appeals.

## II

Crane first argues that WSDOT's violation of Washington State Industrial Safety and Health Act (WISHA) regulations on bloodborne pathogens triggers application of a principle of admiralty law known as the *Pennsylvania*

---

[1] *The Pennsylvania*, 86 U.S. (19 Wall.) 125, 22 L. Ed. 148 (1873).

[2] 361 U.S. 107, 80 S. Ct. 173, 4 L. Ed. 2d 142 (1959).

Rule.[3] According to Crane, the *Pennsylvania* Rule applies to shift the burden on causation to the defendants to prove that their WISHA violations could not have contributed to her injury. Because defendants could not prove that she had hepatitis C prior to the needle incident, Crane argues that they cannot meet this burden and should be liable to her as a matter of law.

■ It is clear that WISHA regulations apply to the ferry system, at least to the extent that they do not conflict with Coast Guard regulations.[4] We also note that WSDOT does not contest Crane's assertion that it violated applicable WISHA regulations on bloodborne pathogens in effect at the time of the needle incident.[5] Therefore, the issue turns on whether the *Pennsylvania* Rule applies to shift the burden on causation to WSDOT to show that the violations could not have contributed to Crane's injury. We hold that it does not.

■ In the nineteenth century case of *The Pennsylvania*, a small sailing vessel had collided with a steamer in heavy fog.[6] Then-existing maritime law required sailing vessels to use foghorns while underway in foggy weather, but at the time of the collision the sailing vessel was instead using a bell.[7] The United States Supreme Court held that where a vessel fails to comply with such a statutory duty, the burden

---

[3] Crane also argued to the court below that defendants' alleged violation of Occupational Safety and Health Act (OSHA) regulations triggered the *Pennsylvania* Rule, but they have apparently abandoned that argument and now focus exclusively on Washington State Industrial Safety and Health Act (WISHA) violations.

[4] *Inlandboatmen's Union v. Dep't of Transp.*, 119 Wn.2d 697, 700, 836 P.2d 823 (1992). Crane claimed the trial court erred in finding that OSHA and WISHA regulations do not apply to Washington State Ferries. However, the court did not so hold. Rather, it concluded that such violations do not trigger application of the *Pennsylvania* Rule.

[5] WISHA regulations regarding bloodborne pathogens became effective on May 26, 1992. WAC 296-62-08001. The sections mandating an Exposure Control Plan became effective on June 26, 1992, and the sections regarding information and training became effective on July 27, 1992. Crane was stuck by the needle in August 1992, after the regulations became effective.

[6] *The Pennsylvania*, 86 U.S. at 133.

[7] *The Pennsylvania*, 86 U.S. at 135.

on causation shifts to the violator to show not only that the violation might not have been one of the causes of the injury, but that it could not have been.[8]

Although more than a century old, the *Pennsylvania* Rule is still widely applied following violation of Coast Guard regulations and maritime safety statutes.[9] But Crane has not cited, and we have not found, any cases in which a court has applied the rule to shift the burden on causation to a defendant for violation of a general safety statute as opposed to a maritime-specific one. In *Jones v. Spentonbush- -Red Star Co.*,[10] the Second Circuit held that an Occupational Safety and Health Act (OSHA) violation did not trigger application of the *Pennsylvania* Rule and did not shift the burden of proof to defendant. The court noted that unlike the defendants in *The Pennsylvania*, Spentonbush had not violated a maritime statute or Coast Guard regulation. Instead, it violated OSHA, which is a general workplace safety regulation not specifically aimed at shipping activities.[11] WISHA, like OSHA, is a general workplace safety act which is not maritime specific. We refuse to significantly broaden application of the *Pennsylvania* Rule by shifting the burden of proof on causation to WSDOT.

### III

■ We next address whether Crane has mustered sufficient evidence to meet her burden of proof on causation and overcome summary judgment. On appeal of summary judgment, the standard of review is de novo, with the appellate

---

[8] *The Pennsylvania*, 86 U.S. at 136.

[9] *See, e.g., Churchill v. The F/V Fjord*, 857 F.2d 571, *amended by* 892 F.2d 763 (9th Cir. 1988) (navigation lights); *In re Seaboard Shipping Corp.*, 449 F.2d 132 (2d Cir. 1971) (lifeboat regulations); *Kernan v. Am. Dredging Co.*, 355 U.S. 426, 78 S. Ct. 394, 2 L. Ed. 2d 382 (1958) (fire on tug caused by open-flame kerosene lamp).

[10] 155 F.3d 587, 595-96 (2d Cir. 1998).

[11] *Spentonbush*, 155 F.3d at 595.

court performing the same inquiry as the trial court.[12] A motion for summary judgment may be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[13] All reasonable inferences from the facts must be considered in the light most favorable to the nonmoving party.[14]

■ Where, as here, a seaman's cause of action is rooted in the Jones Act, legal cause is established when the employer's negligence "was a cause, however slight, of his injuries."[15] The quantum of evidence necessary to support a finding of Jones Act negligence is less than that required for common law negligence.[16] Despite this reduced standard, Crane must still demonstrate that there is a genuine issue of material fact for a jury to decide.

■ The sole evidence submitted by Crane in support of her claim is a declaration from her treating physician, Dr. Christopher Shuhart, who stated that "on a more probable than not basis, the hepatitis C is related to the needle stick injury which occurred on the vessel in 1992." But Dr. Shuhart based his expert opinion on the fact that *Crane* offered no other history which would be a likely cause of hepatitis C infection, and because the onset of the symptoms fit the time frame in which he would expect the symptoms to first manifest.

WSDOT argues that Crane has not met her burden of proof because a series of 1986 blood tests "show that Ms. Crane tested positive at that time for 'non-A non-B hepatitis,' which is now known as hepatitis C." But there is nothing in the record indicating that Crane tested positive for any form of hepatitis in 1986. The tests to which WSDOT refers appear to be a comprehensive blood chemistry screening. Lacking a definitive positive test result,

---

[12] *Herron v. Tribune Publ'g Co.*, 108 Wn.2d 162, 169, 736 P.2d 249 (1987).

[13] CR 56(c); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

[14] *Scott v. Pac. W. Mountain Resort*, 119 Wn.2d 484, 502, 834 P.2d 6 (1992).

[15] *Havens v. F/T Polar Mist*, 996 F.2d 215, 218 (9th Cir. 1993).

[16] *Havens*, 996 F.2d at 218.

WSDOT obtained the expert opinion of Dr. Richard Willson, who interpreted the 1986 blood chemistry results and concluded that "on a more probable than not basis, Ms. Crane had a chronic hepatitis going back to at least 1986" and that "she has had liver dysfunction that may have likely been associated with non-A non-B hepatitis which today is almost exclusively hepatitis C." Dr. Willson also stated that "the pattern of liver function abnormalities going back to 1986 are not consistent with alcohol induced liver injury." WSDOT also submitted deposition testimony from three of Crane's doctors, including Dr. Shuhart, all of whom stated that they were unable to determine the discrete cause of Crane's hepatitis C infection on a more probable than not basis.

The factual matter in dispute in this case is whether the needle stick caused Crane to acquire hepatitis C. Viewing the evidence in the light most favorable to Crane, the nonmoving party, we cannot find that Crane has met even a reduced burden of proof on causation. While Crane did not conclusively test positive for hepatitis C prior to the needle incident, Dr. Willson's expert testimony indicated that the blood chemistry screening was consistent with hepatitis C and inconsistent with alcohol induced injury. Significantly, Dr. Shuhart's declaration did not controvert Dr. Willson's interpretation of the 1986 blood test results. Instead, Dr. Shuhart's opinion was based solely on Crane's own incomplete recounting of her medical history and on her hepatitis C symptoms. There is nothing in the record to indicate that Dr. Shuhart has ever seen the pre-injury test results. Either Crane did not inform Dr. Shuhart of the 1986 tests, or Dr. Shuhart chose to ignore them in his declaration. The sole evidence provided by Crane in support of her claim completely fails to address the critical issue of the 1986 abnormal blood chemistry tests. Moreover, in a subsequent deposition, Dr. Shuhart was unable to say that the needle stick caused Crane's hepatitis C infection on a more prob-

able than not basis.[17] Taken alone, Dr. Shuhart's declaration might raise a causation issue. However, given the uncontroverted evidence provided by Dr. Willson, Crane has not shown that there is an issue of material fact.

█ Lastly, we grant WSDOT's request to strike appendices A, B, and C of Crane's opening brief because those materials were not submitted to the trial court below and were not made part of the record at appeal.[18]

Affirmed.

WEBSTER, J., and HOWARD, J. Pro Tem., concur.

Review granted at 143 Wn.2d 1013 (2001).

Case dismissed by order of the Supreme Court May 21, 2001.

---

[17] Because Crane has not met her burden of proof on causation, *Sentilles* has no bearing on our result.

[18] RAP 9.12; *Nelson v. McGoldrick*, 127 Wn.2d 124, 141, 896 P.2d 1258 (1995).