# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JOHN GROGAN, an individual, | ) | No. 73704-0-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| SEATTLE BANK, a Washington | ) | |
| State registered bank; and PATRICK | ) | |
| PATRICK, an individual; and | ) | |
| J.D. DELAFIELD, an individual, | ) | |
| | ) | FILED: August 22, 2016 |
| Respondents. | ) | |
| | ) | |

LEACH, J. — John Grogan appeals the trial court's dismissal of this lawsuit against Seattle Bank (Bank). When the Bank hired Grogan, it agreed to pay severance equal to three years' salary if his employment ended within 12 months of a change in the Bank's control. As required by their agreement and Federal Deposit Insurance Corporation (FDIC) regulations, the Bank sought FDIC approval to pay an agreed severance payment plus attorney fees, costs, and interest. The FDIC determined that any payment to Grogan greater than 12 months' salary, inclusive of amounts allocated to fees, costs, and interest, violated its regulations about golden parachute payments and denied approval. Grogan claims that the trial court should have ignored the FDIC determination because it was wrong. The trial court decided that FDIC's determination

preempted its authority to order any further payment to Grogan. We agree and affirm.

## FACTS

Seattle Bank hired John Grogan as its chief credit officer and executive vice president in October 2008. The Bank agreed to pay Grogan a severance payment equal to three years' salary if the Bank changed control and Grogan resigned. The Bank did not seek preapproval of this employment agreement from the FDIC. In December, the FDIC designated the Bank as "troubled." The FDIC issued a cease and desist letter to the Bank in June 2009, which was replaced by a memorandum of understanding.

In June 2010, Seattle Financial Group, the Bank's sole shareholder, sold its shares, and the new shareholders elected a new board of directors. Grogan resigned in May 2011 and requested a $540,000 severance payment he claimed under his employment agreement. The Bank disputed that a change in control had occurred and informed him that it needed FDIC approval before it could pay him any amount. The parties negotiated unsuccessfully.

Grogan sued the Bank, its CEO (chief executive officer), Patrick Patrick, and a board member, J.D. Delafield. In March 2013, the Bank and Grogan negotiated a $500,000 settlement, subject to FDIC and Washington Department of Financial Institutions approval. The Bank asked the FDIC for approval. In

May 2013, the FDIC rejected the settlement because the settlement amount constituted a golden parachute payment under its regulations. It indicated that it would consider approving a settlement that did not exceed 12 months' salary.

On April 25, the trial court ordered the Bank to obtain the regulatory permission it needed to pay Grogan one year's salary, $180,000. The trial court also ordered the Bank to pay Grogan attorney fees and costs and prejudgment interest, with the amounts to be determined later. The FDIC sent a letter dated May 6 to the Bank stating that

> any payments to IAPs [institution-affiliated parties] that left the Bank while a troubled designation was in force would be subject to golden parachute restrictions and prohibited without prior FDIC approval. Such payments include any amounts payable to or for the benefit of IAPs pursuant to arbitration awards, judgments, orders or other payments.

The Bank applied to the FDIC on May 23 for permission to pay Grogan $180,000.00. Before the FDIC responded, the trial court awarded Grogan $300,114.38 in attorney fees and $1,597.16 in costs but did not address prejudgment interest. On June 12, the FDIC confirmed its receipt of the application and advised the Bank that it would consider any attorney fees, costs, and prejudgment interest subject to golden parachute regulations. It reminded the Bank that it could not make these payments without first obtaining FDIC approval and also reminded the Bank that it had denied the Bank's earlier application to pay Grogan $500,000.

The Bank filed a supplemental application on June 20 requesting permission to pay Grogan the attorney fees and costs awarded by the trial court, plus interest. It included a request that the FDIC make separate determinations for the severance payment, the attorney fees, costs, and interest. In a July 2 letter, the FDIC denied all requests. It considered the requested payments in the aggregate and found that together they constituted an excessive golden parachute payment. It stated that it considered the amounts requested in the aggregate because "the entire amount is for the benefit of Mr. Grogan and therefore no meaningful distinction exists between the various types of proposed payments for purposes of regulatory approval." The Bank requested reconsideration on July 17, which the FDIC denied.

The parties then agreed to a $250,000 settlement, subject to FDIC approval or nonobjection. The FDIC denied approval because the settlement amount exceeded 12 months' salary.

At the Bank's request, the trial court vacated its orders and ordered the Bank to seek FDIC approval to pay Grogan one year's severance. After the FDIC approved the Bank's application, the Bank paid Grogan. The trial court then dismissed the case. Grogan appeals.

STANDARD OF REVIEW

This court reviews a trial court's order on summary judgment de novo, affirming where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[1]

ANALYSIS

Grogan argues that the trial court should have ignored the FDIC decisions denying the Bank permission to pay attorney fees, costs, interest, and the full agreed severance amount. We disagree.

The FDIC insures all bank and savings association deposits and regulates all insured depository institutions.[2] FDIC regulations prohibit insured depository institutions like the Bank from making golden parachute payments to IAPs like Grogan.[3] A "golden parachute payment" is one

> in the nature of compensation by any insured depository institution . . . for the benefit of any current or former IAP pursuant to an obligation of such institution . . . that . . . [i]s received on or after . . . [a] determination by the insured depository institution's . . . appropriate federal banking agency [that it is] in a troubled condition.[4]

---

[1] Annechino v. Worthy, 175 Wn.2d 630, 635, 290 P.3d 126 (2012).
[2] 12 U.S.C. §§ 1811, 1814.
[3] 12 U.S.C. § 1828(k); 12 C.F.R. § 359.
[4] 12 C.F.R. § 359.1(f).

FDIC's regulations permit payment of certain contractual obligations when that payment falls outside the golden parachute payment definition or when an exception applies.[5]

One exception allows payment when an employment contract provides for a reasonable severance "not to exceed twelve months salary" to an IAP triggered by a change in control of the institution.[6] The FDIC must approve a payment under this exception before it is made.[7]

The employment agreement between Grogan and the Bank made the agreement terms subject to the FDIC's regulations about golden parachute payments:

> Notwithstanding anything in this Agreement to the contrary, if the payments or benefits to be provided under this Agreement, together with any other payments or benefits which the Executive has the right to receive from the Bank or any entity which is a member of an "affiliated group" of which the Bank is a member, constitute an "impermissible parachute payment" (as defined in 12 CFR 359 et. seq. (the "FDIC Parachute Payment Regulation")), then the obligations under this Agreement shall be modified so as to be consistent with FDIC Parachute Payment Regulation and the Bank shall be allowed to modify the Agreement as required to ensure ongoing compliance with such laws.

Grogan challenges the trial court's deference to two FDIC determinations. He claims that the FDIC made wrong decisions that the trial court should have

---

[5] 12 C.F.R. § 359.1(f)(2); 12 C.F.R. § 359.4(a).
[6] 12 C.F.R. § 359.4(a)(3).
[7] 12 C.F.R. § 359.4(a)(3).

ignored. He contends that the FDIC improperly considered the payment of attorney fees, costs, and interest to be part of a golden parachute payment. And he claims that the FDIC erred by failing to apply an exception for payments required by a state statute.[8]

Grogan argues that "[a]ttorneys' fee awards under Washington law are not part of any 'golden parachute' and therefore do not require FDIC permission." He asserts that an attorney fee award is not "'in the nature of compensation,'" which is what golden parachute regulations control. He points to a different FDIC regulation that prohibits the payment of both an indemnification payment and attorney fees to an IAP and invokes a canon of statutory construction to show that FDIC did not include attorney fee payments in the regulation barring golden parachute payments.[9]

Grogan also points to an Internal Revenue Code (IRC) provision about employer deductions that defines an excess parachute payment almost the same as the FDIC regulations define a golden parachute payment. Because the IRC provision has been interpreted by the Internal Revenue Service and courts not to

---

[8] See 12 C.F.R. § 359.1(f)(2)(vi).

[9] See 12 C.F.R. §§ 359.1(l)(1), (2)(ii); Keene Corp. v. United States, 508 U.S. 200, 208, 113 S. Ct. 2035, 124 L. Ed. 2d 118 (1993) ("'[W]here Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion.'" (alterations in original) (internal quotation marks omitted) (quoting Russello v. United States, 464 U.S. 16, 23, 104 S. Ct. 296, 78 L. Ed. 2d 17 (1983))).

include attorney fees and costs paid or incurred in connection with excess parachute payments, Grogan contends fees and costs cannot be considered part of a golden parachute payment.[10]

Grogan also contends that the text of 12 C.F.R. § 359.1(f)(2)(vi) excepts attorney fees from the definition of a golden parachute payment:

> (2) **Exceptions.** The term *golden parachute payment* shall not include:
>
> . . . .
>
> (vi) Any severance or similar payment which is required to be made pursuant to a state statute or foreign law which is applicable to all employers within the appropriate jurisdiction (with the exception of employers that may be exempt due to their small number of employees or other similar criteria).

Grogan asserts that the Bank should never have asked the FDIC for permission to pay the fees, costs, and interest awarded by the trial court. He claims that the Bank's inclusion of these amounts in its supplemental request to the FDIC caused the FDIC to err as described. Thus, Grogan asserts that the trial court erred when it failed to order the Bank to pay him attorney fees and it vacated its award of fees to him.

Grogan asked the trial court, and now asks this court, to review and reverse the FDIC's decision about what is part of a golden parachute payment.

---

[10] See 26 U.S.C. § 280G(b)(2)(A); 26 C.F.R. § 1.280G-1.

As the Bank correctly notes, the FDIC's decision preempts the authority of a state court to decide what the Bank must pay Grogan.

Under the supremacy clause of the United States Constitution, federal law preempts state law where Congress indicates an express or implied intent to occupy a field or where a state law would conflict with federal law.[11] A defendant may assert federal preemption as a defense to state court actions.[12] But "[t]here is a strong presumption against preemption and '[s]tate laws are not superseded by federal law unless that is the clear and manifest purpose of Congress.'"[13] "Federal regulations, within the scope of an agency's authority, have the same preemptive effect as federal statutes."[14]

The Bank acknowledges that the federal regulations at issue do not contain an express preemption clause. But it contends that conflict preemption precludes Grogan's claims because the Bank could not comply with both the FDIC's direction not to pay Grogan anything more than 12 months' pay—including any payment characterized as attorney fees, costs, or interest—and a trial court order requiring it to pay more. We agree.

---

[11] U.S. CONST. art. VI, cl. 2; Inlandboatmen's Union of the Pac. v. Dep't of Transp., 119 Wn.2d 697, 701, 836 P.2d 823 (1992).

[12] Stevedoring Servs. of Am., Inc. v. Eggert, 129 Wn.2d 17, 23, 914 P.2d 737 (1996).

[13] Stevedoring, 129 Wn.2d at 24 (some alterations in original) (quoting Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 327, 858 P.2d 1054 (1993)).

[14] Inlandboatmen's Union, 119 Wn.2d at 702.

And state courts may not enforce contract provisions that contradict federal law.[15]

> When a federal statute condemns an act as unlawful the extent and nature of the legal consequences of the condemnation, though left by the statute to judicial determin ation, are nevertheless federal questions, the answers to which are to be derived from the statute and the federal policy which it has adopted. To the federal statute and policy, conflicting state law and policy must yield.[16]

Grogan responds that the Bank cannot show that conflict preemption applies. He asserts that federal regulations governing golden parachute payments do not include attorney fees awarded under state statutes. But he ignores the circumstance that the FDIC denied the Bank's application to pay Grogan attorney fees and costs based on its interpretation of its own regulations and putting any contrary state court interpretation in direct conflict.

Grogan argues that Christensen v. Harris County[17] provides courts with authority to give FDIC determinations and letters less deference than FDIC regulations. Thus, he contends that FDIC determinations do not preempt state court authority. But Grogan fails to appreciate that the deference discussed in

---

[15] Sola Elec. Co. v. Jefferson Elec. Co., 317 U.S. 173, 176, 63 S. Ct. 172, 87 L. Ed. 165 (1942) (holding that violation of Sherman Anti-Trust Act of 1890, 15 U.S.C. §§ 1-7, precluded enforcement of contract requiring price fixing); Awotin v. Atlas Exch. Nat'l Bank of Chicago, 295 U.S. 209, 214, 55 S. Ct. 674, 79 L. Ed. 1393 (1935) (prohibiting enforcement of contract provision violating the National Bank Act, 12 U.S.C. §§ 21-26).

[16] Sola Elec. Co., 317 U.S. at 176.

[17] 529 U.S. 576, 587, 120 S. Ct. 1655, 146 L. Ed. 2d 621 (2000).

<u>Christensen</u> is the deference a federal court gives to a federal agency interpretation of federal law when that court reviews a federal agency decision. It does not apply to a preemption analysis under the supremacy clause.

CONCLUSION

The FDIC's determination that prohibits the Bank from paying Grogan more than one year's salary as severance, including amounts for attorney fees, costs, and interest, preempts any state court authority to order more. We affirm.

_____ Leach, J.

WE CONCUR:

_____ Schindler, J.

_____ Becker, J.