[No. 50484-9. En Banc. September 6, 1984.]

FARWEST STEEL CORPORATION, *Appellant,* v. S. A. DeSANTIS, ET AL, *Respondents.*

*Frederickson, Weisensee & McCord, Lloyd W. Weisensee, John R. Dudrey, Schwabe, Williamson, Wyatt, Moore & Roberts, Ridgway K. Foley, Jr.,* and *Paul N. Daigle,* for appellant.

*Parks, Montague, Allen & Greif, Alex L. Parks, C. Kent Roberts, Knapp, O'Dell & Knapp,* and *Hugh A. Knapp,* for respondents.

DORE, J.—Farwest Steel Corporation sought to impose a lien in state court against the barge *Seaspan 241,* a/k/a *Ceres,* for steel supplied to Nichols Boat and Barge Builders, Inc., for repair work. The trial court granted the barge owner's motion for summary judgment and dismissed the claim, holding federal maritime law had preempted the Washington boat lien statute, RCW 60.36.010, and the Washington chattel lien statute, RCW 60.08. We agree.

## FACTS

In June 1980, West Coast Charters, Inc., the owner of the barge, contracted with Nichols to do a substantial barge repair.[1] Nichols made arrangements to purchase its steel

---

[1]The June 18, 1980 contract for repair of the barge was actually between Nichols Boat and Barge Builders, Inc., and Lakeview Charters, Inc. Between March and June 1981, all of the interest in Lakeview, including the barge, was transferred to defendant West Coast Charters, Inc. West Coast assumed the rights and liabilities of Lakeview under its contract with Nichols. West Coast ultimately paid Nichols all that was owed for work done on the Lakeview–Nichols contract and also paid Nichols for work done on the barge after West Coast became the owner. For simplicity, we refer to West Coast as the owner of the barge throughout this opinion.

requirements from Farwest. Farwest had delivered $434,857.83 of steel to the Nichols shipyard. Subsequently, Nichols stopped work on repair of the barge because of financial difficulties. The sum of $179,768.44 remains due and unpaid. West Coast paid Nichols all sums billed for work performed on the barge, and finished the repair contract with another contractor.

Farwest originally filed suit in federal district court in Oregon against the barge, Nichols and West Coast, seeking to foreclose a lien on the barge for unpaid steel under the Federal Maritime Lien Act, 46 U.S.C. §§ 971–975. Upon commencing this action, Farwest obtained an order directing the federal marshal to seize the barge. West Coast successfully moved to quash the seizure. They argued that Nichols did not act as the agent of the owner in ordering the steel from Farwest and, therefore, no lien could attach under 46 U.S.C. § 971.[2] The in personam claims against Nichols and West Coast were preserved for trial in the United States District Court in Oregon.

Farwest then filed the instant lawsuit in Clark County Superior Court against the barge owners, seeking to impose a lien on the barge under the Washington boat lien statute, RCW 60.36.010 and/or the Washington chattel lien statute, RCW 60.08.

Subsequent to the Superior Court's order of dismissal judgment, the in personam claims in federal district court proceeded to trial. The federal trial judge ruled that "Since the agreement between Farwest and Nichols concerns the furnishing of necessaries to a specific vessel, a maritime object, it follows that the agreement between Farwest and Nichols is a maritime contract." *Farwest Steel Co. v. Barge Seaspan 241,* No. 81–951–FR, slip op. and order, at 13 n.2

---

[2] 46 U.S.C. § 971 provides:

"Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."

(D. Or. Jan. 26, 1984). The federal court entered a judgment dismissing Farwest's claims. Farwest appealed this judgment to the Ninth Circuit of the United States Court of Appeals.

## FEDERAL MARITIME LIEN ACT PREEMPTION

The Federal Maritime Lien Act preempts state lien statutes which propose to create liens enforceable by actions "in rem in admiralty against vessels for repairs, supplies, towage, . . . and other necessaries." 46 U.S.C. § 975. Farwest contends that if the steel contract was nonmaritime, RCW 60.36.020 provides an appropriate avenue to foreclose the lien for unpaid steel,[3] as its provisions designate the builder as the agent for the owner in establishing a lien for unpaid supplies.

█ The federal district court judgment, however, held that the steel contract was maritime in nature. Farwest is bound by this determination and may not relitigate the issue in state court. *State v. Reed,* 92 Wn.2d 271, 595 P.2d 916, *cert. denied,* 444 U.S. 930 (1979).

█ The California court addressed a similar problem in *Stephens v. Weyl–Zuckerman & Co.,* 34 Cal. App. 210, 216, 167 P. 171 (1917):

> In this case, although the action, so far as its title is concerned, is directly against the owner of the launch only, yet the plaintiffs have in their complaint gone further, and proceeded *in rem,* or against the *res* or launch itself as effectually as though they had done so directly, or *eo nomine,* by alleging their right to the lien provided by section 813 of the Code of Civil Procedure, and praying for the sale of the launch under the foreclosure of the lien for the satisfaction of the debt sued for. Call the action what we may—*quasi in rem,* if that be the proper designation of an action in which both the person and

---

[3]RCW 60.36.020 provides:

"Such liens [boat liens created by RCW 60.36.010] may be enforced, in all cases of maritime contracts or service, by a suit in admiralty, in rem, and the law regulating proceedings in admiralty shall govern in all such suits; and in all cases of contracts or service not maritime, by a civil action in any superior court of this state as provided in RCW 61.12.162."

the *rem* itself are proceeded against—it cannot be denied that, since by such action it is sought to make the property or thing itself liable for the debt growing out of a contract for the repair thereof, the action involves a proceeding *in rem* in the sense and to the extent that jurisdiction to enforce the lien is, under the terms of the federal statute in question, entirely and solely in the federal courts of admiralty.

The present action is essentially one in rem against the barge to impress a lien for materials used in its *repair*. By its express terms, 46 U.S.C. § 975 preempts the application of our boat lien statute to such a case. *See In re Mission Marine Assocs., Inc.,* 633 F.2d 678 (3d Cir. 1980).

Farwest next contends it has a chattel lien on the barge under RCW 60.08.010.[4] They claim this statute is not preempted by federal maritime law. We disagree. Whether asserting its claim under the boat lien or chattel lien statutes Farwest is proceeding in rem against the barge to impose a lien for steel used in its repair. Federal maritime law clearly preempts the application of state statutes in this area. *United States v. Fishing Vessel ZARCO,* 187 F. Supp. 371 (S.D. Cal. 1960). As one author has observed:

> The Lien Act does not in terms repeal the State lien statutes: it merely "supersedes" them "to the extent that" they purport to create rights enforceable *in rem* as to the types of claims which are covered by the Lien Act. . . . In theory the State statutes are still in force as to whatever service liens are not covered by the Lien Act or the general maritime law. In fact they are either moribund or dead.

(Footnotes omitted.) G. Gilmore & C. Black, *Admiralty*

---

[4]RCW 60.08.010 provides:

"Every person, firm or corporation who shall have performed labor or furnished material in the construction or repair of any chattel at the request of its owner, shall have a lien upon such chattel for such labor performed or material furnished, notwithstanding the fact that such chattel be surrendered to the owner thereof: *Provided, however,* That no such lien shall continue, after the delivery of such chattel to its owner, as against the rights of third persons who, prior to the filing of the lien notice as hereinafter provided for, may have acquired the title to such chattel in good faith, for value and without actual notice of the lien."

544–45 (1957).

Further, even assuming the chattel lien statutes could be applied in this case, Farwest failed to perfect any lien it might have had against the barge by failing to file notice of lien in compliance with RCW 60.08.020. Moreover, the record indicates that not all of the steel supplied by Farwest found its way into the subject barge. Farwest sold the steel to Nichols on open account. Neither the supplier nor the shipbuilder managed to maintain an accurate accounting system which would identify particular steel deliveries with the material used in the barge. On this record we must conclude that Farwest failed to establish any lien against the barge as a matter of law.[5]

## UNJUST ENRICHMENT

■ Farwest asserts a claim for unjust enrichment against the owners of the barge. They contend the value of

---

[5]Part of the record in this case consists of the transcript of the trial in the federal district court in Oregon. Mr. Wilson O. Nichols, President of Nichols Boat and Barge Builders, Inc., testified about the contractual relationship between his company and Farwest. The following testimony appears at pages 42–43 of that record:

Q Now, how long has your company been doing business with Farwest Steel?

A Approximately three years since we began and had this location, yes.

Q Three years would take us back then to 1978?

A Yes.

Q And what has been your relationship with Farwest Steel? How did you operate with them?

A By—very simple. Call on the phone and order steel or give them a list of steel, and they would deliver it, and then we—we work on a normal—it was a 30–day invoice, and they were pretty good about letting it go over 30–days' collection. We went up to 90 and 120–days at times. It was always, I understood, on an open–account–type thing.

Q So then you would pay them as you could?

A Yes.

Q And in connection with—Did they invoice you for any steel that was delivered to your yard in the last three years based upon it going into particular vessel, or was it just open account?

A No, it was never based on a vessel. It was always based on time—the time when we ordered it. As a matter of some days after it came in, we got an invoice, whatever it was.

Q And you simply routinely paid that invoice?

A Yes.

the barge was enhanced by materials supplied by Farwest to Nichols, and the barge owners should not enjoy the benefit of this enhanced value while Farwest goes unpaid. No contract existed between Farwest and West Coast. The facts are undisputed that West Coast, the barge owner, paid Nichols for all repair work performed on the barge. The owner received nothing more than what he paid for. There was no unjust enrichment. *Chandler v. Washington Toll Bridge Auth.,* 17 Wn.2d 591, 137 P.2d 97 (1943).

## ATTORNEY FEES

West Coast, on its cross claim, contends it is entitled to an award of attorney fees as prevailing party on Farwest's lien claim brought under the chattel lien statute. RCW 60.08.050 provides in pertinent part:

> The court may allow, as part of the costs of the action, the moneys paid for filing or recording the claim, and a reasonable attorney's fee in the action.

In *Forrester v. Craddock,* 51 Wn.2d 315, 323–24, 317 P.2d 1077 (1957), we explained that the attorney fee language in the mechanics' lien statute was "not mandatory, but, by its terms, permissive, leaving the matter of allowing attorneys' fees, . . . to the discretion of the superior court." In the instant case, faced with similar language in the chattel lien statute, we hold the matter of allowing attorney fees to be within the trial court's discretion. The trial judge denied attorney fees and we find nothing in the record to indicate he abused his discretion. We affirm such denial.

## MOTION TO STAY

Recently, Farwest filed a motion to stay proceedings in state court, pending a decision on its appeal of the federal judgment. We decline to do so because we find that, irrespective of the federal appeals court decision, the Federal Maritime Lien Act in the subject case preempts application of our state lien laws. The federal preemption statute, 46 U.S.C. § 975, provides:

> This chapter shall supersede the provisions of all State statutes conferring liens on vessels, insofar as such stat-

utes purport to create rights of action to be enforced by suits in rem in admiralty against vessels for repairs, supplies, towage, use of dry dock or marine railway, and other necessaries.

Regardless of the nature of the Farwest–Nichols contract, 46 U.S.C. § 975 expressly preempts the application of state lien laws to effect this remedy.

In the Oregon federal court both the owner and Farwest maintained that the foreclosure action was maritime in nature and the judge so found based on substantial evidence. On appeal to the Ninth Circuit, it is highly unlikely that it would reverse and hold the subject repair job nonmaritime. Even if it did, the Washington State Superior Court could give Farwest no relief through the Washington chattel lien and boat lien statutes, as the evidence is overwhelming that Farwest failed to trace steel purchases from Nichols into the repair of the subject barge as required by such statutes. As a stay of proceedings would accomplish nothing but further delay, we deny the motion.

## CONCLUSION

We hold that the Clark County Superior Court in Washington correctly granted West Coast summary judgment of dismissal against Farwest on the basis that the federal maritime law had preempted the Washington boat lien and chattel lien statutes.

We deny West Coast's petition for attorney fees and Farwest's motion for a stay.

We affirm.

WILLIAMS, C.J., ROSELLINI, UTTER, BRACHTENBACH, DOLLIVER, DIMMICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.

Reconsideration denied November 26, 1984.