[No. 41181-4-II.   Division Two.   September 25, 2012.]

DENNIS MATHESON, *Appellant*, v. THE CITY OF HOQUIAM ET AL., *Respondents*.

812

*Karl Eric Dickman* (of *E. Dickman Law Firm*), for appellant.

*Steven R. Johnson, City Attorney*, for respondent City of Hoquiam.

*Robert M. McKenna, Attorney General*, and *Martha F. Wehling* and *Jennifer E. Morey, Assistants*, for respondent Department of Natural Resources.

¶1 HUNT, J. — Dennis Matheson appeals the superior court's orders and summary judgment dismissal of his lawsuit to reclaim his vessel, the *Northern Retriever*, from the City of Hoquiam and the Department of Natural Resources (DNR), which took custody of it under chapter 79.100 RCW, Washington's "Derelict Vessel Act." Matheson argues that the Grays Harbor County Superior Court lacked subject matter jurisdiction to enforce what he characterizes as an action in rem against the vessel and failed to follow federal court process requirements under the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

¶2 Hoquiam and the DNR respond that (1) the *Northern Retriever* was a "dead ship" and, thus, not subject to federal

admiralty jurisdiction; (2) the State took custody of the vessel under its own police power; (3) the superior court enforced the Derelict Vessel Act in personam, which is not subject to exclusive admiralty jurisdiction; (4) even if the superior court proceeding had been in rem, it was a state forfeiture proceeding, which does not fall within exclusive federal jurisdiction; (5) Matheson is essentially arguing federal preemption, but general federal maritime law does not preempt the state's Derelict Vessel Act; and (6) Matheson's appellate challenge to the superior court orders fails to comply with RAP 10.3.

¶3 We hold that the DNR and Hoquiam took custody of the *Northern Retriever* as a public nuisance under the state's police power, an action not preempted by federal law and over which the state superior court had subject matter jurisdiction; and that the superior court had in personam jurisdiction over Matheson as the vessel's owner. We affirm.

## FACTS

### I. Vessel "Abandoned"[1] over State Aquatic Lands

¶4 The *Northern Retriever* was a 194-foot war tugboat, constructed in 1943. For 15 years, beginning in 1993, Matheson anchored the *Northern Retriever* over state-owned aquatic lands near Rennie Island in Grays Harbor. In 2004, after the *Northern Retriever* spilled oil into the harbor, the DNR informed Matheson that the tug was trespassing over state-owned aquatic lands and that he needed to move it. For the next several years, the DNR continued to inform Matheson that he needed to move the vessel.

¶5 In 2008, Matheson attempted to move the *Northern Retriever*. But when it appeared to "spin out of control," another tugboat had to help Matheson move the *Northern*

---

[1] Clerk's Papers (CP) at 60.

*Retriever* five miles[2] to a new anchorage, again over state-owned aquatic lands. Clerk's Papers (CP) at 141. Matheson did not move the *Northern Retriever* again.

¶6 On the *Northern Retriever*, and two of Matheson's other vessels, Hoquiam posted notice of its intent to obtain custody under the Derelict Vessel Act. Hoquiam notified Matheson that it would obtain custody of the *Northern Retriever* as an "abandoned" vessel under state law on June 16, 2008, after which Hoquiam could "use or dispose of it in any appropriate and environmentally sound manner without further notice to the owner." CP at 60. The notice also explained the legal process by which Matheson could redeem his vessel and the costs for which he could be liable.[3]

---

[2] A worker on the other tugboat reported that (1) the *Northern Retriever* on its own was difficult to move; (2) nevertheless, the tugboat had the equipment to keep the *Northern Retriever* steady after pulling it from the mud; (3) once the tugboat assisted, the *Northern Retriever* was no longer in danger of spinning out of control or sinking and, in fact, "float[ed] quite well." CP at 141.

[3] The notification read:

In accordance with Revised Code of Washington (RCW) [chapter] 79.100, the vessel NORTHERN RETRIEVER . . . has been declared abandoned because it meets the definition of an abandoned vessel as described in RCW 79.100.010. CITY OF HOQUIAM, acting as an authorized public entity with the authority granted in RCW 79.100, intends to take custody of the above vessel on JUNE 16, 2008. Once we obtain custody of the vessel, we are authorized to use or dispose of it in any appropriate and environmentally sound manner without further notice to the owner. In order for the owner to retain custody of the vessel, the owner must obtain authorization to moor or anchor the vessel in its current location, move it to an anchorage area or moorage facility that has authorized the vessel, or remove the vessel from the water. If the owner wishes to redeem the vessel once CITY OF HOQUIAM has taken custody, per RCW 53.08.320(5) the owner must commence a lawsuit to contest CITY OF HOQUIAM'S decision to obtain custody of the vessel, or the amount of reimbursement owed, in the superior court of the county in which the vessel was located. The lawsuit must be commenced within ten days of losing custody or the owner's right to a hearing is waived and the owner will be liable for any costs owed to CITY OF HOQUIAM. The costs the owner may be liable for include, but are not limited to, costs incurred exercising the authority granted in RCW 79.100.030, all administrative costs incurred by CITY OF HOQUIAM during the procedure set forth in RCW 79.100.040, removal and disposal costs, and costs associated with environmental damages directly or indirectly caused by the vessel.

CP at 60.

## II. Procedure

¶7 In July 2008, after Hoquiam had taken custody,[4] Matheson filed a lawsuit against Hoquiam to assert his claim to the *Northern Retriever*. In September, the superior court allowed the DNR to intervene and enjoined Matheson from boarding the *Northern Retriever* pending resolution of his litigation.

¶8 The DNR hired a marine surveyor to inspect the *Northern Retriever* for its seaworthiness, resale value, and salvage value. The surveyor reported that the *Northern Retriever* was unseaworthy and potentially hazardous because (1) its hull was leaking; (2) it had a "[g]iant hole"[5] in the floor where a steering wheel would be placed; (3) it had no means of navigation because of its "inoperative propulsion engines, incomplete steering system, and absence of bow anchor gear"; (4) it represented a major source of potential future pollution, even if the fuel tanks were emptied; and (5) its current location was "perilously near the shipping channel and [it] would be a hazard to navigation if [it] were to break free of [its] moorings and sink in the channel" or "be blown against bridges or docks in the area." CP at 79. The surveyor also opined that the *Northern Retriever*'s only possible commercial value was in the form of scrap steel from its hull. The surveyor concluded, "[T]he vessel presents a significant danger to the environment, surrounding infrastructure and to [itself], and [it] should be removed from the water as soon as possible." CP at 129.

¶9 The DNR moved for summary judgment and a permanent injunction to prevent Matheson from boarding the *Northern Retriever*, which the superior court granted in November. CP at 6-10. In its order, the superior court declared that (1) the *Northern Retriever* was in a state of

---

[4] Hoquiam transferred custody of the *Northern Retriever* to the DNR in August 2008.

[5] Verbatim Report of Proceedings (VRP) (Aug. 13, 2010) at 22.

extreme disrepair with its seaworthiness in question; (2) it was a "public nuisance"; (3) the DNR had authority under the Washington's Derelict Vessel Act, namely RCW 79.100.030 and .050, to dispose of the *Northern Retriever*; and (4) Matheson would be liable for the disposal costs, treble damages for trespass, and attorney fees to be determined later. CP at 9.

¶10 Because the *Northern Retriever*'s only value was as scrap, the DNR initiated its disposal, awarding the demolition contract to the lowest responsible bidder. The DNR incurred costs in moving the *Northern Retriever* to appropriate moorage and in repairing its hull to prevent catastrophic failure, including environmental damage.[6]

¶11 In May 2010, after disposing of the *Northern Retriever*, the DNR compiled its costs incurred and asked the superior court to award judgment against Matheson for $834,643.95,[7] as provided in the superior court's November 2008 order and under the Derelict Vessel Act. Matheson moved to set aside the November 2008 judgment and to dismiss the case for lack of jurisdiction; the superior court denied this motion. When Matheson then disputed the DNR's costs, the superior court set the case for trial to determine damages.

¶12 At a trial in August 2010, the DNR presented one witness, the derelict vessel removal program manager, who explained the costs that the DNR had incurred to dispose of the *Northern Retriever*. One of Matheson's witnesses testified about the scrap value of the *Northern Retriever*, which he baldly asserted was $4.1 million. Matheson did not ask the witness to explain or to clarify his estimate. The

---

[6] Under RCW 79.100.030(1) and chapter 70.95 RCW, the State was required to dispose of the vessel in an environmentally sound manner.

[7] The DNR claimed it incurred $913,317.43 in costs to dispose of the *Northern Retriever*, but also applied credits totaling $78,673.48, resulting in the $834,643.95 request.

superior court awarded the DNR $804,643.95.[8] The superior court denied Matheson's motion to vacate the judgment order. Matheson appeals.

## ANALYSIS

### I. State Superior Court Subject Matter Jurisdiction

¶13 We first address Matheson's argument that the superior court lacked subject matter jurisdiction over this case because (1) the superior court, the DNR, and Hoquiam effectively proceeded in rem against the *Northern Retriever*; and (2) the superior court allowed the destruction of the *Northern Retriever* without following the notice and legal process required under the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions in federal court.[9] Disagreeing, we hold that (1) the DNR and Hoquiam obtained custody of the *Northern Retriever* under Washington's police power; (2) the superior court did not proceed in rem against the *Northern Retriever*; and (3) exclusivity of in rem federal jurisdiction does not constitute a clear and manifest purpose to supersede Washington's police power under our state's Derelict Vessel Act.

### A. Standard of Review

¶14 Subject matter jurisdiction is a prerequisite to the exercise of judicial power; any judgment entered without subject matter jurisdiction is void. *Bour v. Johnson*, 80 Wn. App. 643, 646, 910 P.2d 548 (1996). Parties cannot

---

[8] The superior court originally entered a judgment of $834,643.95. The court later reentered judgment to correct clerical mistakes, decreasing the original judgment by $30,000 because there had been 290 tons of unaccounted for scrap value missing in the original judgment.

[9] In the summary judgment hearing to determine custody of the *Northern Retriever*, Matheson conceded the absence of any factual dispute pertaining to its seizure and suggested entering "agreed orders." VRP (Nov. 17, 2008) at 7. One agreed order provided that Matheson would be "liable to [the] DNR for the costs that have been and will be incurred in handling and disposing of the Northern Retriever." CP at 8.

confer subject matter jurisdiction on a court by agreement. *In re Marriage of Furrow*, 115 Wn. App. 661, 667, 63 P.3d 821 (2003). A party can raise subject matter jurisdiction at any time, including for the first time on appeal under RAP 2.5(a). *Bour*, 80 Wn. App. at 646-47. We review a determination of subject matter jurisdiction de novo. *Bour*, 80 Wn. App. at 647. Federal preemption of state law is also a question of law, which we review de novo. *Axess Int'l Ltd. v. Intercargo Ins. Co.*, 107 Wn. App. 713, 722, 30 P.3d 1 (2001).

## B. Federal Maritime/Admiralty System

■ ¶15 The United States Constitution provides that federal judicial power "shall extend . . . to all cases of admiralty and maritime jurisdiction." U.S. CONST. art. III, § 2, cl. 1. Under 28 U.S.C. §1333(1), the successor to the Judiciary Act of 1789,[10] federal courts have "original jurisdiction, exclusive of the courts of the States," over admiralty/maritime cases, "saving to suitors in all cases all other remedies to which they are otherwise entitled." This "saving to suitors" clause gives state courts concurrent jurisdiction over cases where the common law traditionally is competent to provide a remedy. 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 4-4 (5th ed. 2011) (citing *Leon v. Galceran*, 78 U.S. (11 Wall.) 185, 191, 20 L. Ed. 74 (1870)). Thus, maritime claim plaintiffs suing a defendant directly in personam may elect to bring their lawsuits in federal admiralty courts or in state courts. *Bergeron v. Quality Shipyards, Inc.*, 765 F. Supp. 321, 323 (E.D. La. 1991).

■ ¶16 Under the "saving to suitors" clause, concurrent jurisdiction extends to a state court enforcing a personal judgment against the defendant, even if, in the course of enforcing that judgment, the court orders the defendant's vessel to be sold. 1 SCHOENBAUM § 4-4 n.4 (5th ed) (citing *Rounds v. Cloverport Foundry & Mach. Co.*, 237 U.S. 303, 35 S. Ct. 596, 59 L. Ed. 966 (1915)). There are two notable

---

[10] 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 4-4 (5th ed. 2011).

exceptions to this concurrent jurisdiction: First, federal courts have exclusive admiralty jurisdiction over proceedings that begin and are carried out in rem, where a vessel itself is treated as the offender and named as the defendant in order to enforce a right under federal admiralty law. 1 SCHOENBAUM § 4-4 (citing Supplemental Admiralty Rules C, D); 2 AM. JUR. 2D *Admiralty* § 98 (2004).

■ ¶17 In exercising concurrent in personam jurisdiction over the owner of a vessel, however, state courts cannot adopt remedies that change substantive maritime law, which remain the exclusive province of the federal courts. *Madruga v. Superior Court*, 346 U.S. 556, 561, 74 S. Ct. 298, 98 L. Ed. 290 (1954). To avoid changing substantive maritime law, state courts cannot provide a remedy in personam that " 'works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations.' " *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447, 114 S. Ct. 981, 127 L. Ed. 2d 285 (1994).[11] Whether state courts provide an in personam remedy that works material prejudice to general maritime law, or interferes with the uniformity of it, is a question of federal preemption of state law. *See Am. Dredging Co.*, 510 U.S. at 445, 447.

¶18 The second exception to concurrent jurisdiction under the "saving to suitors" clause concerns exclusive jurisdiction in federal courts for lawsuits under the Limitation of Shipowners' Liability Act, the Ship Mortgage Act, the Suits in Admiralty Act, and the Public Vessels Act. 1 SCHOENBAUM § 4-4.[12] Because Matheson does not argue ex-

---

[11] (Quoting *S. Pac. Co. v. Jensen*, 244 U.S. 205, 216, 37 S. Ct. 524, 61 L. Ed. 1086 (1917).)

[12] Citing 46 U.S.C. §§ 30501 et seq. and Supplemental Admiralty Rule F; 46 U.S.C §§ 31301 et seq.; 46 U.S.C. §§ 30901 et seq.; 46 U.S.C. §§ 31101 et seq.

46 U.S.C. § 31307 provides that the federal statutory framework for maritime liens and commercial instruments, enforced in federal court, supersedes "any state statute conferring a lien on a vessel to the extent the statute establishes a claim

clusive federal jurisdiction under these federal acts, we address only the first exception to concurrent jurisdiction—whether the DNR and Hoquiam acted in rem against the *Northern Retriever* or provided a remedy in personam that worked material prejudice to the characteristic features of the general maritime law.

## C. State Police Power To Abate Maritime Nuisance; In Personam Jurisdiction over Matheson

¶19 Equating the DNR's and Hoquiam's state court action to an in rem action against the *Northern Retriever* itself, and not against him individually, Matheson asserts that the DNR's and Hoquiam's notice named only the *Northern Retriever* and failed to name him personally,[13] while clearly stating that the DNR and Hoquiam could dispose of the *Northern Retriever* after obtaining custody.[14] Matheson concedes that the DNR "has the police power to abate public nuisance[s]"; but he argues that "the [DNR and

to be enforced by a civil action in rem against the vessel for necessaries." The minimum requirements for federal courts to proceed in rem are having the res (the vessel) before the court and a maritime lien claim. *Logistics Mgmt., Inc. v. One (1) Pyramid Tent Arena*, 86 F.3d 908, 912 (9th Cir. 1996). "Federal district courts obtain *in rem* jurisdiction over a vessel when a maritime lien attaches to it"; "[u]pon [the] filing [of] an *in rem* complaint, the clerk of court issues a warrant for the arrest of the *res*." *Crimson Yachts v. Betty Lyn II Motor Yacht*, 603 F.3d 864, 868, (11th Cir.), *cert. denied*, 131 S. Ct. 178 (2010). The res remains in the custody of the federal court, serving as both the defendant and subject matter, during the entire proceeding. *Crimson Yachts*, 603 F.3d at 868.

[13] Although the notice did not refer to Matheson by name, it did alert the "owner" of the *Northern Retriever* about potential liability for environmental and disposal costs for the vessel. CP at 60.

[14] In support, Matheson quotes the following:

"The foundation of jurisdiction [i]n rem is the taking of the vessel into the custody of the court and the characteristic virtue of a proceeding [i]n rem is that it operates directly upon the [r]es as the titular respondent in the suit and . . . the actual subject-matter of the jurisdiction and not, as at common law, mediately through the right, title or interest of a party brought before the court as defendant through personal service or the mere attachment of property as his with a view to subjecting his interest therein to the satisfaction of the judgment."

Br. of Appellant at 8 (quoting *Pasternack v. Lubetich*, 11 Wn. App. 265, 267-68, 522 P.2d 867 (1974)).

Hoquiam] exceed[ed] the state's jurisdictional limits" because general federal maritime law does not provide for state action to abate public nuisances on state waters. Reply Br. of Appellant at 10. His argument fails.

¶20 The DNR and Hoquiam counter that (1) the *Northern Retriever* was a "dead ship" and, therefore, not subject to admiralty jurisdiction; (2) the superior court had jurisdiction to exercise state police power over the *Northern Retriever* because it was a nuisance under the state's Derelict Vessel Act; (3) the superior court's August 2010 judgment was against Matheson in personam and not against the *Northern Retriever* in rem; and (4) the superior court's actions amounted to a forfeiture proceeding and, thus, were within the superior court's subject matter jurisdiction. Br. of Resp'ts at 12. We agree with the DNR and Hoquiam that they disposed of the *Northern Retriever* under the state's police power to abate a public nuisance, which did not depend on superior court jurisdiction, and that the superior court did not proceed in rem against the *Northern Retriever*.[15]

■■ ¶21 The State of Washington exercises its police power when it takes or damages property to conserve the safety, morals, health, or general welfare of the public. *Eggleston v. Pierce County*, 148 Wn.2d 760, 767-68, 64 P.3d 618 (2003). Our legislature enacted the Derelict Vessel Act to address its finding that derelict and abandoned vessels "are public nuisances and safety hazards as they often pose hazards to navigation, detract from the aesthetics of Washington's waterways, and threaten the environment with the potential release of hazardous materials." RCW 79.100.005. Here, the DNR and Hoquiam validly exercised their police power to abate a public nuisance and to protect the safety

---

[15] Accordingly, we do not address the DNR's and Hoquiam's forfeiture and "dead ship" arguments, and we do not determine whether the *Northern Retriever* was a "vessel in navigation," subject to exclusive federal maritime jurisdiction. Reply Br. of Appellant at 3.

and general welfare of the public under Derelict Vessel Act.[16] *See Eggleston*, 148 Wn.2d at 767.

¶22  RCW 79.100.060(1) makes the owner of an abandoned or derelict vessel responsible for reimbursing the government for "auditable costs" of the nuisance abatement, including administrative costs, removal and disposal costs, and costs associated with environmental damages directly or indirectly caused by the vessel.[17] Unlike in *Farwest Steel*,[18] the removal, disposal, and environmental costs assessed against Matheson were distinct from maritime liens because they were incurred by the DNR to remove the *Northern Retriever* from navigable state water

---

[16] Despite the DNR's and Hoquiam's legitimate police power action in seizing and disposing of the *Northern Retriever*, Washington courts cannot provide an in rem remedy for a cause of action within maritime jurisdiction. *Am. Dredging Co.*, 510 U.S. at 446. Matheson suggests that we "not let a party use the form of the proceeding to supersede the substance of what is really happening" because, "[r]egardless of how this case was pled it [wa]s really an in rem action." Br. of Appellant at 9. The DNR and Hoquiam respond that the Derelict Vessel Act makes the vessel's owner personally liable for the costs associated with governmental abatement of maritime nuisances.

Because the judgment here was entered against Matheson personally, and the Derelict Vessel Act does not purport to create liability against the vessel itself, the DNR and Hoquiam assert that their action in state court was in personam against Matheson and not, as Matheson alleges, an in rem action, over which federal courts exercise exclusive jurisdiction. *Am. Dredging Co*, 510 U.S. at 446.

Both parties cite *Farwest Steel Corp. v. DeSantis*, 102 Wn.2d 487, 687 P.2d 207 (1984), to support their claims. The *Farwest Steel* plaintiffs sought to enforce a maritime-related barge-repair contract against the defendants in federal court, which dismissed their action for lack of a lien attaching under the former Federal Maritime Lien Act, 46 U.S.C. § 971 (1920). *Farwest Steel*, 102 Wn.2d at 488-89. The *Farwest Steel* plaintiffs then sued in state court to impose a lien on the barge under Washington's chattel lien statute and the Washington boat lien statute that gave lien holders the option of filing an in rem suit in admiralty in federal court or a civil action in state superior court. *Farwest Steel*, 102 Wn.2d at 489 n.3. Our Supreme Court held that Farwest Steel's attempt to "impress a lien for materials used in [a barge's] *repair*" was the functional equivalent of an in rem proceeding, over which federal courts had exclusive jurisdiction, and affirmed the superior court's dismissal of the plaintiffs' action. *Farwest Steel*, 102 Wn.2d at 491.

[17] When, in its November 2008 order, the superior court here first affirmed the DNR's taking custody of the *Northern Retriever*, the proceeding could not have been in rem because, at that time, no maritime liens had been asserted against the vessel in the superior court proceedings. *See Logistics Mgmt.*, 86 F.3d at 912 (claim of maritime lien and the res are prerequisites for in rem proceedings).

[18] *Farwest Steel Corp. v. DeSantis*, 102 Wn.2d 487, 687 P.2d 207 (1984).

in a safe and environmentally sound manner under the state's police power. We hold that the DNR and Hoquiam acted under a valid exercise of Washington's police power and that the state superior court did not proceed in rem against the *Northern Retriever*.

### D. No Federal Preemption for Nuisance Abatement

¶23  We next address whether, in recognizing the DNR's and Hoquiam's police power over Matheson and his vessel, the superior court provided a remedy in personam that worked material prejudice to the characteristic features of general maritime law.[19] The DNR and Hoquiam argue that the Derelict Vessel Act is not preempted by federal law or general maritime law because (1) the Act does not contravene an act of Congress;[20] (2) it does not work material prejudice to the characteristic features of maritime law; and

---

[19] Without citing supporting authority as RAP 10.3 requires, Matheson argues that (1) the DNR, Hoquiam, and the superior court's actions "worked a material prejudice to the characteristic features of general maritime law"; and (2) "[t]he state's activities interfered with the proper harmony and uniformity of the maritime law to such an extent they were impermissible under the subject matter jurisdiction of the superior court." Br. of Appellant at 13. Therefore, we do not further consider these arguments. Instead, we examine whether Congress evinced a clear and manifest purpose to supersede Washington's state police powers and conclude that it did not. *See Inlandboatmen's Union of the Pac. v. Dep't of Transp.*, 119 Wn.2d 697, 705, 836 P.2d 823 (1992).

Matheson fails to recognize that he is essentially arguing statutory preemption. In his brief of appellant, for example, he cites *Farwest Steel*, 102 Wn.2d at 490, to support his proposition that Washington courts have "put function ahead of form" in order to rule that statutes essentially creating an in rem claim are unenforceable in state court. Br. of Appellant at 9. Contrary to Matheson's assertion, however, *Farwest Steel* was a preemption case in which our Washington Supreme Court held that, by its express terms, former 46 U.S.C. § 975 (1982) preempted application of our state's boat lien statute. *Farwest Steel*, 102 Wn.2d at 490-91. Matheson does not persuade us that the superior court, the DNR, and Hoquiam functionally proceeded in rem against the *Northern Retriever* without subject matter jurisdiction or that federal law preempted their action.

[20] The DNR and Hoquiam are correct that contravening an act of Congress is an alternative ground for preempting a state statute. *All-Pure Chem. Co. v. White*, 127 Wn.2d 1, 6, 896 P.2d 697 (1995). Because Matheson does not address whether the Derelict Vessel Act contravenes an act of Congress, we do not further address this issue.

(3) it does not interfere with the harmony and uniformity of federal admiralty and maritime law.[21]

■ ¶24 Contrary to Matheson's arguments, when Congress has acted in the admiralty area, "state regulation is permissible, absent a clear conflict with the federal law." *See Askew v. Am. Waterways Operators, Inc.*, 411 U.S. 325, 341, 93 S. Ct. 1590, 36 L. Ed. 2d 280 (1973). In determining whether state regulation may coexist with federal maritime regulation, the Washington Supreme Court has held that "[g]reater deference is given to state legislation . . . where public health and safety are involved" and that Washington's state police powers should not be superseded, absent a " 'clear and manifest purpose of Congress' " to supersede state power. *Inlandboatmen's Union of the Pac. v. Dep't of Transp.*, 119 Wn.2d 697, 705, 836 P.2d 823 (1992) (quoting *Ray v. Atl. Richfield Co.*, 435 U.S. 151, 157, 98 S. Ct. 988, 55 L. Ed. 2d 179 (1978)). Matheson does not cite, nor are we aware of, any clear expression of Congressional intent to supersede state power in the area of abating maritime nuisances.

■ ¶25 Nevertheless, Matheson's concession that the DNR has police power to abate nuisances opens the question of whether the exclusivity of in rem federal jurisdiction constitutes a "clear and manifest purpose" to supersede Washington's police power under our state Derelict Vessel Act. *See Inlandboatmen's Union of the Pac.*, 119 Wn.2d at 705. We hold that it does not: Although our state Derelict Vessel Act permits destruction of the res, namely a derelict vessel, the Act addresses public safety; and the exclusive federal maritime jurisdiction statutory framework does not clearly state congressional intention to supersede the

---

[21] The DNR and Hoquiam also assert that the preemptive effect of federal law is not within the scope of RAP 2.5(a) and, therefore, we need not consider Matheson's preemption arguments for the first time on appeal. We disagree: As we noted earlier, when a preemption issue concerns state court subject matter jurisdiction, a party may raise this issue for the first time on appeal. *Fowlkes v. Int'l Bhd. of Elec. Workers, Local No. 76*, 58 Wn. App. 759, 764, 795 P.2d 137, 808 P.2d 1166 (1990).

states' exercise of their inherent police power to abate such public nuisances. *Askew*, 411 U.S. at 341; *Inlandboatmen's Union of the Pac.*, 119 Wn.2d at 705. We hold, therefore, that the state superior court had subject matter jurisdiction over the DNR and Hoquiam's seizure of the *Northern Retriever* as a vessel abandoned over state aquatic lands and that the court did not err in assessing removal, disposal, and environmental clean-up costs against Matheson.

II. STATUTORY ATTORNEY FEES AND COSTS

¶26 Citing former RCW 79.100.120(2)(a) (2006), RCW 4.84.080, and RAP 18.1, the DNR and Hoquiam argue that, as the prevailing parties below on each order appealed, they are entitled to statutory attorney fees of $200 each and costs incurred to designate supplementary clerk's papers and to transmit the trial record on appeal. We agree.

¶27 Former RCW 79.100.120(2)(a) provides that the prevailing party in litigation is entitled to receive "reasonable attorneys' fees and costs." RCW 4.84.080(2) entitles either party to $200 in "costs to be called the attorney fee" in actions where "judgment is rendered" in the Court of Appeals after argument. Because the DNR and Hoquiam are the prevailing parties on appeal, we award them each $200 in attorney fees and costs for designating supplemental clerk's papers and transmitting the record on appeal.

¶28 We hold that (1) the DNR's and Hoquiam's seizure and disposal of Matheson's *Northern Retriever* under the state Derelict Vessel Act was not an action in rem, did not invade a federally preempted area of law, and was not subject to federal notice and legal process requirements; and (2) the state superior court properly exercised subject matter jurisdiction over the DNR's and Hoquiam's seizure of the vessel and in personam jurisdiction over Matheson as the vessel's owner and person responsible for its removal and disposal costs. We affirm the superior court's summary

judgment dismissal of his lawsuit to reclaim custody of his vessel.

WORSWICK, C.J., and JOHANSON, J., concur.

Review denied at 176 Wn.3d 1030 (2013).