IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32221-1-III |
| Respondent, | ) | (consolidated with |
| | ) | 33704-9-III) |
| v. | ) | |
| | ) | |
| DAVID RANDALL PRIEST, | ) | |
| | ) | |
| Appellant. | ) | UNPUBLISHED OPINION |
| | ) | |
| ———————————————— | ) | |
| | ) | |
| IN THE MATTER OF PERSONAL | ) | |
| RESTRAINT OF | ) | |
| | ) | |
| DAVID RANDALL PRIEST. | ) | |
| | ) | |
| Petitioner. | ) | |

FEARING, C.J. — David Randall Priest seeks, through a personal restraint petition, relief from his January 13, 2014, convictions for possession of a stolen motor vehicle and possession of stolen property in the third degree. Priest contends that the superior court lacked jurisdiction over him and this prosecution because he is an enrolled member of the Confederated Tribes of the Colville Nation and any crimes occurred solely on tribal land.

This court consolidated Priest's personal restraint petition with his direct appeal, in which he challenges legal financial obligations imposed by the trial court. Because the only evidence of possession of stolen property showed the property to be on reservation land, we hold that the trial court lacked jurisdiction to entertain this prosecution against David Priest. We vacate his convictions, judgment, and sentence. We need not and do not address Priest's challenge to legal financial obligations.

## FACTS

In June 2013, while investigating another crime, Omak Police Officer Michael Morrison recovered stolen property belonging to James Barker. Officer Morrison notified Barker, who reported that someone stole other items from his property, including a blue and white 1985 Ford F-250 pickup truck.

Later, while off-duty and driving on County Road 280, Officer Michael Morrison saw a truck fitting the pickup's description at 1109 Lone Pine HUD Road, located on the reservation of the Confederated Tribes of the Colville Nation. The United States holds this reservation land in trust, or the land is an Indian allotment remaining under restriction from alienation. As he drove along Lone Pine HUD Road, Officer Morrison saw David Priest, whom he knew by sight, lift a tarp that covered the pickup. Officer Morrison directed James Barker to drive by the Lone Pine HUD Road residence to confirm his ownership of the Ford pickup. Barker did.

2

Nos. 32221-1-III; 33704-9-III
*State v. Priest; In re Pers. Restraint of Priest*

On June 16, 2013, Omak Officer Michael Morrison contacted Okanogan County Sheriff Deputy Eric Mudgett, who obtained a search warrant for 1109 Lone Pine HUD Road. In preparing the affidavit for the warrant, Deputy Mudgett contacted the Colville Tribe and confirmed that Cheryl Priest, David Priest's sister, resided at the residence. Upon arriving at 1109 Lone Pine HUD Road, law enforcement found Priest in a travel trailer behind the house on the property. Priest told Deputy Mudgett that Garret Elsberg brought the Ford F-250 to the property a few weeks earlier and asked Priest to perform repairs on the pickup. Deputy Mudgett examined the pickup truck and confirmed it was the same truck reported stolen by James Barker. The deputies also discovered other personal property on the Lone Pine HUD Road property reported stolen by Barker, including a tool box, a pressure washer, a shop vacuum, a dolly, a cooler, a gas can, and some tie-down straps.

## PROCEDURE

The State of Washington charged David Priest, in Okanogan Superior Court, with possession of a stolen motor vehicle and possession of stolen property in the third degree. A jury found Priest guilty of both crimes. The trial court sentenced Priest to fifty months' confinement for possession of a stolen motor vehicle and 364 days' confinement for possession of stolen property in the third degree. The superior court also ordered Priest to pay $1,110.50 in legal financial obligations, including a $100.00 mandatory deoxyribonucleic acid (DNA) collection fee. The court additionally ordered Priest to

3

submit to a DNA collection unless "the Washington State Patrol crime laboratory already has a sample . . . for a qualifying offense." Clerk's Papers at 28.

In a direct appeal, David Priest challenges the constitutionality of the mandatory DNA collection fee, and he contends the trial court erred in imposing legal financial obligations, without inquiring into his present or future ability to pay. In addition, Priest filed a pro se statement of additional grounds for review, in which he contends that the trial court lacked jurisdiction to prosecute him because he is an enrolled member of the Colville Tribe and all the acts supporting his convictions occurred on the Colville Reservation. Priest also contends he received ineffective assistance of counsel because his attorney, despite his request, failed to raise jurisdiction at trial and because his trial attorney failed to call key witnesses.

While his direct appeal was pending, David Priest moved the superior court to vacate and set aside his judgment and sentence. Because Priest filed the motion more than one year after the entry of the judgment and sentence, the trial court transferred the motion to this court for consideration as a personal restraint petition. In his petition, Priest again challenges the trial court's jurisdiction to prosecute him. This court consolidated Priest's personal restraint petition with his direct appeal.

After the State filed a responsive brief, David Priest filed a reply and motion to accept additional evidence under RAP 9.11(a). Priest attached, to the motion, a Certificate of Indian Blood, two print-outs of property records obtained from the

4

Okanogan County Assessor's Office, and a letter from Okanogan County Assessor Scott

D. Furman. Priest asked that we accept the attachments as evidence for purposes of his

appeal. The State objected to Priest's motion and argued that Priest failed to satisfy five

of the six requirements of RAP 9.11. The State also contended that this court should not

consider the attachments to the motion because they cannot be found in the original trial

court record.

This court ordered a reference hearing and asked the superior court, by written

findings of fact, to answer the following questions:

> 1. During what, if any dates, has David Priest been an enrolled member of the Confederated Tribes of the Colville Nation?
> 2. Whether David Priest knowingly had possession of stolen property off the Confederate Tribes of the Colville territory, and, if so, what stolen property? Also, if so, when?
> 3. Whether David Priest knowingly had possession of stolen motor vehicle off the Confederate Tribes of the Colville territory, and, if so, when?

Order for Reference Hearing, *State v. Priest*, No. 32221-1-III, consolidated with *In*

*re Pers. Restraint of Priest*, No. 33704-9-III (Wash. Ct. App. April 25, 2016).

During the reference hearing, Deputy Eric Mudgett testified that he never saw the

stolen car or property off the reservation. Deputy Mudgett testified that David Priest told

him that Garrett Elsberg delivered the stolen pickup truck to the reservation.

After a reference hearing, the trial court entered the following findings of fact:

> 1. The Defendant/Petitioner, DAVID RANDALL PRIEST (hereinafter referred to as "Priest"), was found guilty of the crimes of

5

Possessing a Stolen Motor Vehicle and Possessing Stolen Property in the Third Degree by a jury on the 6th day of December, 2013.

2. Priest did not testify at the trial and the defense presented no witnesses. (From review of trial proceedings).

3. David Priest testified at this Reference Hearing that he has been a member of the Colville Confederated Tribe since birth; however *his Certificate of Indian Blood* does not bear a date of enrollment. Further he stated that his mother, Donna Mae Priest, was full (4/4) Colville and that his dad, William Virgil Priest, was a non-member. This information would lead this court to understand that David Priest would be 2/4 or one-half; however, the *Certificate of Indian Blood* disclosed 5/16. The Court finds that he is an enrolled member of the Colville Confederated Tribes, but cannot confirm the information that he was enrolled since birth. However the [c]ourt would find that he was enrolled at the time of these alleged offenses (June 2013) as he was an adult at the time.

4. The residence and premises from which the Ford F250 pickup truck and various items of personal property were stolen or taken from was located at 62 Woods Road (property of James Lee Barker) which is located north of Omak (Okanogan county), Washington and NOT within the boundaries of the Confederated Tribes of the Colville Reservation. This locality lies west of the Okanogan River near the Omak airport.

5. The Ford F250 pickup belonging to Romero Chavez (stored at James Lee Barker's premises) was initially viewed by Omak Police Officer Morrison after receiving information about a stolen truck while following up on and investigating other burglaries. Officer Morrison located the truck at 1109 Lone Pine HUD which lies east of Omak and is within the boundaries of the Colville Reservation. The residential property was determined to be tribal property and in the possession of Cheryl Priest who is Mr. Priest's sister. Officer Morrison turned the burglary investigation information over to Sgt. Mudgett of the Okanogan County Sheriff's Office due to jurisdictional concerns, since Barker's and Chavez's properties were outside the city limits of Omak and within county jurisdiction.

6. David Priest did not reside at 1109 Lone Pine HUD, but in fact resided at 119 S. Cedar in the City of Omak which location is NOT within the boundaries of the Colville Tribes Reservation. This is the same address disclosed in his *Certificate of Indian Blood* and testified in the Reference Hearing as being his address at the time of his arrest.

7. The time frame for the burglaries and theft of property from the Barker property was approximately the second half of May 2013 and the

6

first two weeks of June 2013. Barker thought Chavez had removed the pickup truck and didn't immediately concern himself to the fact that it was gone. Further Barker had an elderly parent whom he cared for which took him away from his premises during that time frame. He was contacted by Omak Police, who found an old box of his bank checks during their investigation of several burglaries that alerted him to the initial burglary and theft at his premises.

8. David Priest has an extensive criminal history of burglaries, theft, trafficking and possession of stolen property. He has thirteen convictions for crimes of dishonesty. He was then (June 19, 2013) out on bail and facing new criminal charges for Trafficking in Stolen Property in the First Degree (Three counts) and Possession of a Stolen Motor Vehicle (Two counts), which had been found at Shelly Priest's (ex sister in law) residence which was nearby the 1109 Lone Pine house. He was subsequently convicted in April 2014 on all five counts as the undersigned judge was the trial judge in that matter.

9. David Priest related to Sgt. Mudgett that an individual known as Garrett Elsberg had brought the Ford F250 pickup to the Cheryl Priest's [sic] so David Priest could put it in working or running order. Further Mr. Priest told Sgt. Mudgett that he would get ahold of Elsberg and have him contact the officer which never occurred. Elsberg had multiple warrants out for his arrest. However, this inability to start or run the pickup is contrary to the evidence submitted at trial by Mr. Chavez and Mr. Barker who both knew the truck was operational. The photographs introduced at trial and the Reference Hearing show the truck being stripped and disassembled which is clearly contrary to the preliminary statement made to Sgt. Mudgett. No evidence was presented that Garrett Elsberg delivered the pickup except the self-serving statement of David Priest. A jury has the ability to determine the credibility of statements and whether it makes sense given the facts. Here the jury did not accept the facts of Mr. Priest as relayed to Sgt. Mudgett relative to Garrett Elsberg delivering the truck and personal property.

10. Additionally David Priest talked about Garrett Elsberg being a person involved in drugs and other criminal activities when he had his initial contact with Sgt. Mudgett; yet David Priest provided no information about how Elsberg might be contacted or what specific repairs Elsberg had ask[ed] Priest to do except get the pickup operational. All the statements and actions by Priest appeared to be contrary to the evidence and

7

unreasonable given the situation along with the disclosures by Barker and Chavez.

11. In addition to the Ford F250 pickup, other items of personal property were located and found at 1109 Lone Pine that had been stolen from Barker's premises including a cooler, cargo strap, gas can, tool box, pressure washer, shop vac, hand truck, and Troy-bilt mower. These items were not located in the pickup at Barker's property but in his shop and in his house from which they were taken. Thus Mr. Barker's premises had been burglarized.

12. David Priest did not respond to Sgt. Mudgett's initial contact at the travel trailer, but did when Dep. Dave Rodriguez entered the trailer, went to the back bedroom area, and actually saw Mr. Priest present. He appeared to be hiding from law enforcement, but for Dep. Rodriguez' search of the trailer sleeping area.

13. The Ford F250 truck was covered by a tarp, except for the rear portion, which hid items of personal property taken from the Barker property. This was to prevent others from seeing the items or to secret them.

14. This court finds David Priest's prior criminal activities of theft, possessing stolen property, stripping or disassembling property or vehicles are factually related to the crimes he was charged with herein. While he did not testify at his trial, the jury is instructed on direct and circumstantial evidence along with witness credibility. Given that his claim to Sgt. Mudgett was that he was to repair and make operational the Ford F250, the clear evidence is contrary and unsupportive of his claim. Therefore the credibility of Mr. David Priest must be called into question, including the truthfulness of any statement given to law enforcement, and the jury found that he "knowingly" had possession of stolen property and possession of a stolen motor vehicle off the Colville Tribes Reservation between the last two weeks of May 2013 and the first two weeks of June 2013.

Suppl. Clerk's Paper at 108-11. (Emphasis in original).

## LAW AND ANALYSIS

David Priest contends that the trial court lacked jurisdiction over his prosecution for possession of a stolen motor vehicle and possession of stolen property in the third

degree. We agree.

We review de novo whether a particular court has jurisdiction. *Shoop v. Kittitas County*, 149 Wn.2d 29, 33, 65 P.3d 1194 (2003). A petitioner who raises a nonconstitutional error as a basis for relief in a personal restraint petition must show that the error alleged constitutes a fundamental defect that inherently results in a complete miscarriage of justice. *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 811, 792 P.2d 506 (1990).

It is axiomatic that a party may challenge a court's subject matter jurisdiction at any time, including for the first time on appeal or through a collateral attack. RAP 2.5(a)(1); RAP 16.4(c)(1); *Matheson v. City of Hoquiam*, 170 Wn. App. 811, 819, 287 P.3d 619 (2012); *Wesley v. Schneckloth*, 55 Wn.2d 90, 94, 346 P.2d 658 (1959). The Washington Supreme Court explained over fifty years ago: if a court lacks jurisdiction, "any judgment entered is void ab initio and is, in legal effect, no judgment at all." *Wesley v. Schneckloth*, 55 Wn.2d at 93-94. We conclude that a petitioner who can demonstrate the court of conviction lacked jurisdiction to convict him has identified a "fundamental defect" entitling him to relief in a personal restraint petition. Jurisdiction is essential to due process. *State v. LG Elecs., Inc.*, 185 Wn. App. 394, 410, 341 P.3d 346 (2015), *aff'd*, 186 Wn.2d 169, 375 P.3d 1035 (2016).

Article IV, section 6 of the Washington State Constitution provides, in relevant part:

9

> The superior court shall have original jurisdiction . . . in all criminal
> cases amounting to felony, and in all cases of misdemeanor not otherwise
> provided for by law. . . . The superior court shall also have original
> jurisdiction in all cases and of all proceedings in which jurisdiction shall
> not have been by law vested exclusively in some other court[.]

David Priest's petition turns on whether the State's jurisdiction to prosecute him has been

"vested exclusively in some other court." WASH. CONST. art. IV, § 6.

The Confederated Tribes of the Colville Nation is a tribe "acknowledged to have

the immunities and privileges available to federally recognized Indian Tribes." Indian

Entities Recognized and Eligible to Receive Services from the United States Bureau of

Indian Affairs, 81 Fed. Reg. 5,019-02 (Jan. 29, 2016). The State of Washington does not

have criminal or civil jurisdiction over "Indians when on their tribal lands or allotted

lands within an established Indian reservation and held in trust by the United States or

subject to a restriction against alienation imposed by the United States," save for eight

enumerated legal issues, none of which apply here. RCW 37.12.010. However, the State

may assume civil or criminal jurisdiction if a tribe asks it to do so pursuant to RCW

37.12.021.

The Colville Tribe originally invoked the State's assumption of jurisdiction under

RCW 37.12.021. Nevertheless, the State of Washington retroceded all civil and criminal

jurisdiction back to the tribe in 1987. LAWS OF 1986, ch. 267 § 2. Thus, if David Priest

was an enrolled member of the Colville Tribe and possessed stolen property solely on

"tribal lands or allotted lands within an established Indian reservation and held in trust by

10

the United States," the State did not have jurisdiction to prosecute him. RCW 37.12.010; *State v. Clark*, 178 Wn.2d 19, 25, 308 P.3d 590 (2013).

The trial court found that David Priest was an enrolled member of the Colville Tribe during the time of the crimes. The trial court also found that 1109 Lone Pine HUD Road, where the car and property were found, is on the Colville Reservation. The trial court convicted Priest only of possession crimes. The State has forwarded no evidence that David Priest possessed either the stolen car or other stolen items off the reservation. The State presented no testimony as to what, if any, purloined property David Priest possessed outside the reservation, and, if so, where he possessed the property and on what date or dates he possessed the property.

In finding of fact 14 of the reference hearing, the trial court determined that the jury, who found Priest guilty of the possession crimes, also found that he "knowingly" possessed the stolen property off the Colville Tribes Reservation between the last two weeks of May 2013 and the first two weeks of June 2013. We find no such finding in the record and the trial court did not cite to the record for that finding. The jury was never asked to determine the location of the crimes.

David Priest moves this court to deny the State an award of appeal costs. Since we rule in favor of Priest on the merits the motion is moot.

11

Nos. 32221-1-III; 33704-9-III
*State v. Priest; In re Pers. Restraint of Priest*

CONCLUSION

We vacate the convictions of David Priest for possession of a stolen motor vehicle and possession of stolen property in the third degree.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Lawrence-Berrey, J.